Charles Emory Snavely, Appellant, v. Ruth Snavely, Appellee.

**Gen. No. 45,900.**

Opinion filed February 11, 1953. Released for publication February 26, 1953.

DAVID F. SILVERZWEIG, of Chicago, for appellant.

JOHN H. ROSER, of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

Plaintiff appeals from a decree dismissing his complaint for divorce. The essential facts are substantially uncontroverted. The parties were married August 16, 1930 and lived together as husband and wife until October 18, 1948. There were four children born of the

marriage. Plaintiff was employed by a railroad as a yard conductor in charge of a switching crew. He worked for the railroad at night and during the day washed windows for tenants in apartment buildings. On October 18, 1948, at the request of defendant, her physician one Dr. Michel signed a statement which reads: ''I certify I have on this day, the 18th day of October, 1948, personally examined Charles Emory Snavely and found him in immediate need of institutional care.'' It is undisputed that Dr. Michel did not ''personally examine'' plaintiff on October 18, 1948, nor had the doctor examined or treated the defendant at any time within four years preceding October 18, 1948.

On the same day, in the county court of Cook county, defendant herein filed a verified petition pursuant to chapter 91½, section 6, paragraph 1 [par. 6—1], Illinois Revised Statutes 1947, Bar Association Edition [Jones Ill. Stats. Ann. 77.038(57)], praying "that upon hearing the court enter its order adjudging defendant [plaintiff herein] to be a person in need of mental treatment and committing him for care and treatment to a suitable hospital as provided by the Revised Mental Health Act.'' With the petition there was also filed a document entitled ''Physician's Certificate'' and dated October 18, 1948, which reads: ''I have today examined Charles Emory Snavely whom I believe to be mentally ill and in need of immediate institutional care,'' followed by the words ''Diagnosis—Persecution Complex,'' and signed ''William F. Michel.''

About 6:30 o'clock p. m., October 18, 1948, some policemen of the City of Chicago called at the home of the plaintiff and took him to the Psychopathic Hospital in the City of Chicago.

In accordance with chapter 91½, section 6, paragraph 5 [Ill. Rev. Stats. 1947, ch. 91½, par. 6—5; Jones

Ill. Stats. Ann. 77.038(61)] the county court appointed a commission of two qualified physicians who made a report stating that each of them had personally examined the plaintiff on the 21st day of October 1948 and found him to be suffering from paranoid psychosis. The report of this commission recommended that the plaintiff be committed to a mental hospital. October 25th an order of commitment was entered in the county court of Cook county adjudging plaintiff "to be a mentally ill person, incapable of managing or caring for his own estate," and directing that he be committed to the Elgin State Hospital at Elgin, Illinois. Plaintiff was taken to the Elgin State Hospital where he remained until December 22, 1948, when he was discharged after a hearing in a habeas corpus proceeding filed in the superior court of Cook county.

In the present proceeding the ground for divorce alleged in the complaint is desertion, "in that on the 18th day of October 1948 the defendant willfully, maliciously, fraudulently, and with intent to injure the plaintiff, conspired and did have the plaintiff committed to the Elgin State Hospital, from which he was discharged on December 22, 1948, on order of the Superior Court of Cook County after a hearing on a petition for writ of habeas corpus."

In her answer defendant denies that she willfully absented herself from the plaintiff and avers that plaintiff was adjudged insane by a staff of competent physicians and that she acted in good faith under the instructions of a licensed and competent physician.

At the trial the chancellor impaneled a jury to determine the issues. The jury rendered a verdict which reads:.

"We the jury find that the defendant Ruth Snavely, in instituting legal proceedings to have her husband Charles Emory Snavely adjudged and decreed by the

County Court of Cook County to be a person mentally ill, did not act in good faith and for the welfare of her husband."

The chancellor entered a decree adopting the advisory verdict of the jury but found that the acts complained of do not constitute grounds for divorce and dismissed the complaint accordingly.

Plaintiff challenges the validity of the proceedings in the county court. Chapter 91½ Illinois Revised Statutes 1947, section 6—3 [Jones Ill. Stats. Ann. 77.038(59)] provides that "The order setting the hearing on the petition shall direct *reasonable notice* of the time and place of the holding of the hearing be served upon the person alleged to be mentally ill . . . such notice to be served prior to the time set for the hearing." [Italics added.]

 The record of the proceedings in the county court shows that the hearing was set for October 25, 1948 at 8:30 a. m. The return of the sheriff shows that the service of the statutory notice of the hearing on the petition required by section 6—3 was served on Charles Snavely, plaintiff here, on October 25, 1948. Since the statutory notice was not served "prior to the time set for the hearing of the petition in the County Court" the order of commitment of October 25, 1948 finding and adjudicating plaintiff Charles Snavely to be a mentally ill person is void for want of jurisdiction. *Haines v. Cearlock,* 184 Ill. 96; *Behrensmeyer v. Kreitz,* 135 Ill. 591; *Eddy v. People,* 15 Ill. 386.

 In the case last cited, *Eddy v. People,* the Supreme Court stressed the indispensability of notice even where the statute made no provision for it as in the former Act. The court said at page 387:

"We are clearly of opinion that, upon the general principles of law, the supposed lunatic is entitled to reasonable notice. . . . The consequences resulting

from the determination are of the most momentous character to the lunatic both personally and pecuniarily, and so long as it is possible that a sane person might, upon *ex parte* examination, be found to be insane, every principle of justice and right requires that he should have notice and be allowed to make manifest his sanity, and to refute or explain the evidence tending to prove the reverse. The idea is too monstrous to be tolerated for a moment that the legislature ever intended to establish a rule by which secret proceedings might be instituted against any member of the community, by any party who might be interested, to shut him up in a madhouse, by which he might be divested of his property and his liberty, without an opportunity of a struggle on his part.''

Moreover, the judgment of the county court being void for want of jurisdiction of the person it is immaterial whether the attack on it is collateral or direct. *Goodman v. Jarecki,* 310 Ill. App. 392. Because of the fatal defects in the proceedings in the county court we are impelled to disregard the finding and adjudication in the order of commitment entered on October 25, 1948.

██ Plaintiff contends that the findings of the chancellor are sufficient to constitute willful desertion within the meaning of the Divorce Act. We think the evidence warranted the findings in the decree that defendant knew the statement she procured from Dr. Michel on October 18, 1948 was false and that the defendant did not act in good faith in instituting the legal proceedings in the county court to have plaintiff adjudged to be mentally ill. Defendant put in motion a course of events which resulted in plaintiff being unlawfully and forcibly ejected from his home. Being the active party defendant was guilty of willful desertion. *Schneider v. Schneider,* 286 Ill. App. 575; *Mathews v. Mathews,* 227 Ill. App. 465.

 The evidence shows that the parties lived separate and apart for more than a year before the complaint was filed. There was no proof that defendant relented within the year and offered to take him back. Defendant admitted testifying at the habeas corpus hearing in the superior court that "I would be willing for him [defendant] to come back eventually if he would change his attitude." In the present case defendant was asked the following question: "Do you want him to come back there and live with you?" She replied, "If I was sure he would treat me differently than he did before, that he would be more considerate of me and would not strike or threaten me in any way." Plaintiff admitted that he struck the defendant on two occasions. The last incident occurred, according to defendant's testimony, about four years before the separation. Because of the lapse of time between the commission of the acts of cruelty and defendant's desertion we think plaintiff's misconduct was condoned. Plaintiff also admitted keeping two guns at his home. Defendant says that he threatened to kill her and that she was in fear of her life. Plaintiff denies making any threats. But even so plaintiff's alleged misconduct did not justify defendant in resorting to unlawful measures to expel him.

It appears that the parties had a joint bank account at the time of the separation of $1,942.56. These funds were all withdrawn by the defendant. Immediately after plaintiff's release from the Elgin State Hospital he returned to his home to get some clothing and then left for a short visit with some friends in another State. Plaintiff testified that defendant never asked him to come back and live with her. Whenever plaintiff wanted to see his children he communicated with the defendant by telephone and she would arrange to have the children meet him outside of their home. So far as the

evidence shows plaintiff was never invited or permitted to enter his home after he was ousted by defendant on October 18, 1948.

From a careful examination of the record we are of the opinion that the plaintiff has made out a case of willful desertion. We have considered the other points urged and the authorities cited in support thereof but in the view we take of this case we deem it unnecessary to discuss them.

For the reasons given, the decree is reversed and the cause is remanded with directions to enter a decree of divorce in favor of the plaintiff and against the defendant, and also to make such provisions for the custody, support and maintenance of the minor children, if any, as are deemed necessary.

*Reversed and remanded with directions.*

FEINBERG and KILEY, JJ., concur.