Emil Wills, Incompetent, Plaintiff-Appellee, v. Helen Wills, Custodian of Emil Wills, Incompetent, Defendant-Appellant.

Gen. No. 50,048.

First District, Fourth Division.

December 10, 1965.

Morris L. Simons, of Chicago (Marshall Patner, of counsel), for appellant.

Wachowski & Wachowski, of Chicago (Casimir R. Wachowski, Raymond Wasik, and Steve A. Kubiatowski, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

On June 8, 1961, Emil Wills was adjudicated a mentally ill person and committed to the care and custody of his wife, Helen Wills. He was hospitalized from time to time in Wesley Memorial Hospital. In early 1964 he left the hospital, and on July 20, 1964, he filed a petition for discharge from his custodian. On July 21, 1964, the judge of the Circuit Court of Cook County, County Division, appointed a commission of two physicians to examine Emil Wills with reference to his mental condition, and on the same day Wills appeared before the court. The commission found that he had fully recovered and recommended that he be restored to all his rights and privileges as a sane person. The court entered an order on the same date, finding that Emil Wills was fully recovered and ordering his restoration to all rights and privileges.

On August 6, 1964, Helen Wills filed a verified petition to vacate the order of restoration. In that petition she recited the order committing Emil Wills to her custody and his petition for restoration, and stated further that while he, together with his attorneys and agents, knew

316

that Helen Wills had been appointed and was acting as his custodian, no notice was given to her of the mental examinations conducted, the hearing of the commission, or the court hearing on the petition for restoration. She further stated upon information and belief that Emil Wills' condition required continuance of his status as a legal incompetent. She prayed that the order of restoration entered on July 21, 1964, be vacated, that she be permitted to file her answer to the petition, and that the matter be set down for hearing.

In the court hearing on July 21, 1964, Emil Wills testified that he had been in the hospital because of a nervous condition, but that he left the hospital four months before the hearing date. A Dr. Imbiorski testified that the doctor's certificate (accompanying the petition, as required by statute) seemed to be satisfactory; that it adequately described the present condition, and that the patient was apparently "well oriented." Emil Wills' mother testified that he was well and should be restored.

The court then asked Emil Wills why his wife was not there and he replied that she was antagonistic. He said he had been living with his wife and was in her care and custody. The court again asked why his wife was not in court, and he answered this time that she had been asked but did not want to come. He further said that he had asked her to come down and restore his rights but she would not do it. The court asked Wills what reply his wife had made to his request and he said she wanted to keep him under her custody. The court asked him whether he had told his wife that he would be in court on July 21, 1964, and he said he had not so informed her.

On August 6, 1964, the court entered an order denying Helen Wills' petition to vacate.

The question presented to this court as to whether a notice is necessary under the statute requires us to interpret certain sections of the Mental Health Code of

1963 (Ill Rev Stats 1963, c 91½) effective July 1, 1964. Section 10–1 provides:

> *"Petition for discharge—Persons admitted or hospitalized as in need of mental treatment*
> Any person who has been admitted to a hospital as in need of mental treatment or hospitalized as such, or who has been ordered to and remains *in the care and custody of some other person* or some hospital, or any person on his behalf, may file at any time in the court of the county in which such person is hospitalized or otherwise located, or the court of the county from which the patient was originally hospitalized or wherein the consultation required by Section 7–2 of this Act was held, a verified petition setting forth the name of the patient, the circumstances of hospitalization and the date of the prior order of the court ordering the patient to *the care and custody of some other person* or to some hospital for mental treatment, the request for discharge from custody, care, treatment, detention and training under such order of hospitalization and the reasons for such request. Such petition shall be accompanied by the certificate of a physician who shall not be related by blood or marriage to the patient, stating that the patient is no longer in need of mental treatment and setting forth the facts upon which such statement is based." [Emphasis ours.]

Section 10–3 states:

> *"Hearing on petition*
> Upon the filing of any such petition for discharge the court shall set the matter for hearing and shall direct that such reasonable notice be given to the person or to the superintendent of the hospital with whom or in which such mentally retarded person, or person in need of mental treatment was hospitalized,

as circumstances shall indicate, and to such other person or persons as the court may direct."

The Code further provides, in section 1–14:

"*Reasonable notice*
'Reasonable Notice,' when used in this Act, means a written notice served in such manner and at such time prior to the hearing as the court having jurisdiction of the matter shall determine and direct."

The former Mental Health Code, c 91½, § 7–4, provided:

"*Hearing on petition*
Upon the filing of any such petition for restoration or for discharge the Court shall set the matter for hearing and shall direct that such reasonable notice be given to the *person* or to the Superintendent of the hospital *to whom* or to which such mentally ill person, mentally deficient person, or person in need of mental treatment was committed, as circumstances shall indicate, and to such other person or persons as the Court may direct." [Emphasis ours.]

That section is clear and understandable. Section 10–3 lacks the clarity of the old section. However, we think that section 10–3 must necessarily be construed as requiring notice to be given to the person to whom the mentally ill person was committed. To attempt to interpret that section in any other way would make it meaningless, and contrary to the general statutory scheme.

In White v. Prenzler, 7 Ill 2d 624, 131 NE2d 540, the court laid down the rule that in construing notice requirements courts must look to substance, rather than to the form, in seeking the true intention of the legislature. In Snavely v. Snavely, 349 Ill App 369, 110 NE2d 685, the court in discussing whether statutory notice as required by the statute was served upon the appellant

<br>

before he was committed to a state hospital for the insane, cited Eddy v. People, 15 Ill 386, where the rule was laid down that notice in such cases is indispensable even where the statute made no provision for it.

While the consequences of committing an allegedly mentally incompetent person to a mental institution are grave and serious, the consequences of discharging an allegedly mentally incompetent person formerly committed to a mental institution or to a custodian, are also serious, though possibly in a lesser degree. Nevertheless, in this case the statute required notice to be given to the hospital or custodian of such person; this was not done.

The judgment of the County Division of the Circuit Court of Cook County is reversed and the case is remanded to permit the custodian to file an answer to the petition, to require that the petition be set for hearing, and for such other proceedings as are not inconsistent with this opinion.

Reversed and remanded with directions.

DRUCKER and ENGLISH, JJ., concur.