## JOSEPH DINET *v.* CHRISTIAN EIGENMANN, Admr.

### and

### SAME *v.* SAME.

1. ALIMONY—*sum in gross.* Under the statute, the court may, when the justice of the case requires it, decree a sum in gross in full satisfaction of yearly alimony, and even a portion of the husband's real estate in fee to the wife.

2. SAME—*as to amount.* Where the husband receives property of his wife by the marriage, or converts her means into real estate, taking the title in his own name, or where the wife, from her industry, economy and business capacity, contributes largely to the accumulation of a fortune, it is equitable and just that she should share largely in such property, on divorce for the husband's fault; but where she brings nothing to the husband, and contributes but little or nothing to the accumulation or increase of his fortune, she has no just claim to share in a division of property, but is only entitled to alimony as a support, according to his circumstances and condition in life.

3. SAME—*allowing interest on sum.* A decree giving a wife alimony and a certain sum in gross, which requires the defendant to pay ten per cent per annum interest on the same, is erroneous. A decree can draw but six per cent interest, except by consent of the parties.

4. SAME—*execution for its collection.* A decree for the payment of alimony, like any other money decree, may be collected by execution, where the decree does not provide for its being executed by a master in chancery or a commissioner. An execution may issue precisely as upon a judgment at law.

5. SAME—*not released by wife's death.* The sum awarded to a wife, after divorce, for alimony, becomes a debt from the former husband to her, and

upon her death before payment, the husband is not discharged, but the sum due passes to her personal representative precisely as any other money decree, and he may proceed and collect the same.

6. DECREE—*awarding execution after party's death who is entitled to money.* Where a person, having a decree for the payment of money, dies before satisfaction, it is erroneous for the court to award an execution in the name of such deceased party. The cause should be revived in the name of the personal representative, and execution issued in his name, or it may be that the administrator, by filing a copy of his letters, might have an execution as upon a judgment at law.

7. SAME—*as to attorneys' fees, construed.* On a bill for divorce by a wife, the court first ordered the husband to pay to P and A $825 for services rendered the wife, as attorneys' fees, after the restoration of the record and papers which had been burned, to be paid by October 1, 1871, to P $285 for legal services after the verdict in the case, and to P, as surviving partner of D, the sum of $1520, for services rendered by them from the commencement of the suit to the rendition of the verdict: *Held,* that the latter sum included the one first named, and was not in addition thereto.

APPEAL from the Criminal Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

This was, originally, a bill for divorce, filed on January 28, 1870, by Elizabeth Dinet against Joseph Dinet, and a cross-bill by Joseph Dinet against Elizabeth Dinet, for a divorce. The jury found the defendant in the original bill guilty, and the defendant in the cross-bill not guilty. A decree of divorce was granted the complainant on May 29, 1872, and on August 7, 1872, the court ordered that the defendant pay to the complainant the sum of $10,000 on or before the first day of July, 1873, and provided that if this sum was not paid by January 1, 1873, then the same, or such part thereof as should remain unpaid after said 1st day of January, 1873, should, after that date, bear interest at the rate of ten per cent per annum; also, that the defendant pay to the complainant, or to the clerk of the court for her use, the further sum of $2000 per year, each and every year during the remainder of the complainant's life, in quarter-yearly installments. The other material facts appear in the opinion of the court.

Mr. Joseph Schlernitzauer, for the appellant.

Mr. Joseph Pfirshing, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

These records are presented for the purpose of obtaining a construction of a decree allowing attorneys' fees in the divorce suit, and to determine whether decrees can be enforced by execution, as at law, for alimony, as well as the allowance of the attorneys' fees; also, whether a decree can be rendered to draw ten per cent interest. The statute regulating the manner of granting divorces has provided, by the sixth section of the Divorce Law (see R. S. 1845, p. 197), that, on granting a divorce, it "may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just."

Under this provision, it has been repeatedly held that the court may, if the justice of the case requires it, decree a sum in gross in satisfaction of yearly alimony, and even a portion of the husband's real estate in fee to the wife. Where, under the law in force when the marriage in this case occurred, the wife had money which became the property of the husband by marriage, and a divorce followed, it was but equitable and just that she should have all or a portion of it restored to her. So, where the husband converted her means into real estate, and took the conveyance to himself, it is eminently just that all, or at least a portion, of such real estate be transferred to her, or at least the amount of money invested in it. So, where a wife, from her industry, economy and business capacity, contributes largely to the accumulation of a fortune, every principle of justice demands that she have at least a portion of her accumulations. In such a case, it would be positively wrong to turn her off, where the husband is in the wrong, with what would merely pay her board and simply clothe her respectably.

On the other hand, where the wife brings nothing to the husband, and contributes little or nothing to the accumulation or increase of her husband's fortune, she has no just claim to share in a division of property; but, under the law, where the husband is in fault, he is bound to support her according to his circumstances and condition in life; and in such case, it is proper that such support be afforded by an annual, half-yearly or quarterly allowance of a fixed sum, as long as she lives, or until supervening circumstances render it improper. In this latter class of cases there is no equity requiring a division of the property, and in such case it would be improper to make it.

In this case, as the evidence on which the decree for alimony is not before us, we must presume that it fully warranted the decree, in the form in which it was rendered. We are, therefore, clearly of opinion that the law, in many cases, warrants, if it does not require, the decree to allow an amount in gross in satisfaction of all or a portion of alimony. The statute has vested the court with a large discretion as to the manner in which alimony and maintenance shall be decreed, only that, from the circumstances of the parties and the nature of the case, it shall be fit, reasonable and just. No doubt the present law entitling married women to hold their own property and earnings free from the control of their husbands, will, in many cases, develop circumstances which will materially modify decrees for alimony. In many cases, it is decidedly for the best interest of both parties that alimony or maintenance should be decreed in gross. It thereby frees the husband's property and enables him to pursue his business unfettered and more successfully, and at the same time secures the wife from loss or great inconvenience resulting from the death of the husband previous to her own death. Had the deceased wife in this case survived, and the husband died at the time she did, all will see at a glance that it would have complicated, if not seriously embarrassed, the collection of the yearly allowance; yet the statute may have contemplated that the alimony would be generally paid as at common law, by yearly installments, but it at the same time intended to and

has invested the court with a large discretion to vary its allowance and payment according to the nature of the case. Hence, we are clearly of opinion the court had power to decree its payment as was done in this case.

It is next urged that the decree allowing alimony is erroneous in allowing ten per cent interest. An examination of our interest laws will show that legal interest fixed by the statute on indebtedness which draws interest, and in the number are included judgments, is but six per cent, but parties are allowed to contract by express agreement for ten per cent; but the latter rate is not given by operation of law, but is purely a creature of contract. In this decree there was. no contract for ten per cent interest. The court could make no such contract for the parties. That could only be done by themselves. In *White* v. *Haffaker*, 27 Ill. 349, it was held to be error to render a decree drawing ten per cent. *Wayman* v. *Cochrane*, 35 Ill. 152, *Aldrich* v. *Sharp*, 3 Scam. 261, and *Mason* v. *Eakle*, Breese, 52, hold that a judgment or decree can only bear six per cent. Other cases might be cited to the same effect, were it deemed necessary, but it is supposed they are familiar to the profession. In this respect, the decree fixing alimony was erroneous, and it must be modified so as to draw but six per cent per annum.

It is next urged that the court had no power to award execution for the collection of the alimony decreed to be paid by appellant. The 47th section of chapter entitled "Chancery," of the Revised Statutes of 1874, provides that, "where there shall be no direction that a master in chancery or commissioner execute a decree, the same may be carried into effect by execution, or other final process, according to the nature of the case, directed to the sheriff or other officer of the proper county, which, when issued, shall be executed and returned by the sheriff or other officer to whom it may be directed, and shall have the same operation and force as similar writs issued upon judgments at law." The latter part of the section confers power to enforce the decree by attachment, and fine or imprison the defendant for disobedience, and may also direct

a sequestration for disobedience of any decree. It is thus seen, where the decree does not provide for its being executed by a master, that an execution may issue to the sheriff precisely as on a judgment at law. About this there can not be the semblance of a doubt. Language could not make it plainer, nor is there the least room for construction.

If this is a decree, and the proceeding is in chancery, or governed by the rules of chancery practice, then the court has the undoubted right to award execution to collect this alimony, as the decree fails to provide that it shall be executed by a master or a commissioner; and that the court, in this class of cases, exercises a chancery jurisdiction, and is governed by the chancery practice, except as otherwise provided, is beyond all question. See sec. 6, R. S. 1874, p. 420.

But it is objected that the complainant, after recovering the decree for alimony, died, and that it has never been paid. The decree for a divorce was passed and the bonds of matrimony were dissolved several terms before the decree for alimony was enrolled. During this interval, and when this decree for alimony was rendered, the relation of husband and wife had ceased, and none of the rights of that relation continued. The legal liability of the husband for alimony was in the nature of an obligation or duty to a stranger. It was a duty imposed by the statute upon him to contribute to the support of the divorced wife; and when the amount was ascertained and fixed, the right to the money became vested and as fully fixed as had the money been paid or the husband had given his note for the amount. The husband could not resume it, nor did he become entitled to it on her death. It was absolutely the wife's, and went to her representatives precisely as would any other money decree against any other person. It, then, follows that her executor or administrator had the right to proceed and collect it in the same manner that any other decree could be enforced after the death of the person in whose favor it was rendered. But in such a case, the death of the person in whose favor it was rendered should have been shown to the court, and the proof of letters of administration granted, and notice served

on the person required to perform the decree, and the proceeding revived and execution ordered to issue in his name; or, under the 47th section of the Chancery Act, it may be that an execution could be had by the administrator filing a copy of his letters, and having execution issued as may be done in such cases on judgments at law; but it was error for the court, in this case, to award execution in favor of complainant after her death.

At the time the court fixed the amount of alimony, there was also a decretal order entered requiring appellant to pay attorney fees for services rendered complainant in procuring her divorce. He was, first, ordered by that decree to pay to Joseph Pfirshing and Francis Adams $825 for services rendered her after the restoration of the record of the bill, answer, replication and other papers in the case, after their destruction by the fire of October, 1871; to Joseph Pfirshing $285 for services rendered her after the rendition of the verdict, and to Pfirshing, as surviving partner of Daniel Driscoll, deceased, the sum of $1520, for services rendered by them for her from the commencement of the suit to the rendition of the verdict by the jury.

On the 8th of March, 1870, there had been a decretal order made for alimony, and also allowance of solicitors' fee of $300 for prosecuting the suit, and a further order for the payment of a solicitor's fee of $500. This latter order was made on the 4th of February, 1871. These orders directed the money to be paid to Driscoll and Pfirshing. The order allowing and directing the payment of attorneys' fees, of the 7th of August, 1872, and at the time the decree for alimony was rendered, was entered by consent.

On the 21st of November, 1874, the administrator of Elizabeth Dinet filed his letters of administration, from which it appears that she died about the 7th day of December, 1872; and at the November term, 1874, the case was on the docket, entitled Elizabeth Dinet *v.* Joseph Dinet, and a motion was entered to correct the decree allowing solicitors' fees, so that the allowance made on the 7th of August, 1872, state that the

sums ordered to be so paid should be in addition to previous allowances, and also so as to state that the money be so paid to Elizabeth Dinet, for the use of Joseph Pfirshing, surviving partner of Driscoll, still due them for services, and that the amendatory order be entered *nunc pro tunc,* and as of the date of August 7, 1872. This motion was denied, and the petition therefor was dismissed.

Thereupon, Christian Eigenmann, administrator of the estate of the deceased, filed a petition and entered a motion that execution issue on the order for the payment of $1520 to Pfirshing, as solicitors' fees. Objections were interposed, but were overruled by the court, and execution awarded for the sum of $800, the residue of the sum thus allowed as a solicitor's fee, with interest thereon from the 1st day of May, 1873. This last motion, like the previous one, was entered in a case entitled Elizabeth Dinet *v.* Joseph Dinet, and the proceedings were had under that title.

This order, like that entered for the issuing of an execution for the collection of the alimony, was erroneous. No order or proceeding could be had in the name of, or for the benefit of, the deceased complainant. The suit should have been revived in the name of the administrator, and the execution ordered to be issued in his name, as complainant. This was such error as requires the reversal of the order.

But a contest has arisen as to whether the decree allowing solicitors' fees on the 7th of August was intended to and did embrace all the fees in the case, or was in addition to the $800 allowed before the trial of the divorce case. The decree is silent on that question. It does not say it includes the sums previously allowed, nor does it state that the sums last decreed are in addition to those formerly allowed. Appellee, to relieve the difficulty, offered evidence to prove what was understood at the time to be embraced in the decree. This, he manifestly had no right to do. A decree can not exist partly in writing and partly in parol. To have allowed the amendment of the decree, would have been to have so held. It may be, a mistake in a decree can be amended at a subsequent term, but to do so

there must be something in the record of the case by which to amend; but the practice would be unprecedented to permit a judgment or decree to be amended on affidavits or depositions of persons as to their understanding of what was said by the chancellor, or the intention of solicitors, in preparing the decree. To sanction such a practice would lead to great uncertainty, and even to disastrous consequences in many cases. The decree, like all other records and written instruments, must be construed and its meaning gathered from its own language.

Then, does this decree, by its terms, embrace the $800 decreed to and paid by appellant to the same counsel, before the decree of divorce was entered? We are constrained to conclude that the decree ordering the payment of $1520 will bear no other construction than that that sum should be paid for all services rendered to the time named. There is no ambiguity in the statement that it was to Pfirshing and Driscoll, as her solicitors, for services in the cause, from the commencement of the suit until the rendition of the verdict by the jury. Now, it does not say this is in addition to what had already been paid, or that it was for a part of the services rendered; but it is to be paid to them as her solicitors during the period named. It is not as her solicitors since their last previous fee was ordered to be paid. If such had been the intention, language indicating that fact would have surely been employed. On the contrary, the language employed embraces the services for the whole period, and names the sum that shall be paid for services during that time. Services after the jury trial were ordered to be paid for, and the sums ascertained and fixed. So that, from the whole decree, we are clearly of opinion the order to pay the $1520 embraced the $800 previously paid, and that there was nothing remaining unpaid on this decree, and the court below, for that reason, erred in ordering execution to issue for the collection of any sum.

When we consider the fact that appellant has paid, as solicitors' fees, over $2600, we can hardly suppose that, in addition to that large amount, appellant would have consented to

increase the sum $800 more. If the solicitor can show his services were worth more, he must look to the estate of Mrs. Dinet for the balance, as we think this decree, by a fair construction, does not give it to him.

For the errors indicated, the orders of court awarding execution must be reversed, and so much of the decree allowing alimony as directs that the money shall bear ten per cent is modified so that it shall draw six per cent per annum, and the cause is remanded for further proceedings.

*Decree reversed.*