**Orville P. Fox, Plaintiff-Appellant, v. Mike Coyne, Administrator of the Estate of Mary V. Fox, Deceased, Defendant-Appellee.**

**Gen. No. 11,343.**

Second District, First Division.

April 26, 1960.

O'Brien, Burnell, and Puckett, of Aurora, for appellant.

C. A. Caplow and Charles M. Pallardy, of Chicago, and Frank R. Reid, Jr., of Aurora, for appellee.

JUSTICE DOVE delivered the opinion of the court.

On February 9, 1951, Orville P. Fox filed, in the Circuit Court of Kane County his complaint against his wife, Mary V. Fox for divorce on the grounds of cruelty and habitual drunkenness. The defendant filed an answer denying the charges and also filed a counterclaim. By her amended counterclaim Mrs. Fox charged

her husband with cruelty and sought a divorce, and requested alimony, the appointment of a receiver for certain described property in Aurora, an accounting from her husband and an order declaring that she was the owner of a portion of her husband's property. A hearing, without a jury, resulted in a decree granting the plaintiff a divorce and dismissing the counterclaim of Mrs. Fox.

Upon appeal the Supreme Court affirmed the decree of the Circuit Court in all respects except "wherein it denied an award of alimony for the support of the defendant, including the payment of her medical bills and fees for her attorney." The cause was remanded to the trial court with directions to enter an award of alimony to the defendant in such amount as, from the circumstances of the parties and the nature of the case, may be reasonable and just, and to provide therein for the payment of her medical bills and to order the plaintiff to pay a reasonable sum, as fees, to defendant's attorney. (Fox v. Fox, 9 Ill.2d 509.)

On December 18, 1956, the mandate of the Supreme Court was filed in the trial court and notice given to counsel for plaintiff that defendant would appear on February 21, 1957, and request an order for alimony, attorney fees, medical bills and temporary support in accordance with the mandate of the Supreme Court. Thereafter on March 22, 1957, an order was entered by the trial court directing Orville P. Fox to pay Mary V. Fox, as temporary support $100 per week commencing on Friday, March 22, 1957, and weekly thereafter until the further order of the court. By this order the hearing of all other matters was deferred until April 25, 1957. Mrs. Fox died on April 8, 1957.

On May 24, 1957, Kenneth C. Sedlek, Charles M. Pallardy and C. A. Caplow filed their verified petition reciting that Messrs. Sedlek and Pallardy were attorneys and that they represented Mrs. Fox in this pro-

ceeding from March 18, 1955, until the time of her death on April 8, 1957; that they rendered legal services to her, conducted an investigation for evidence in her behalf, had numerous conferences with her and interviewed numerous witnesses in her behalf, appeared in court, prepared all pleadings on her behalf, expended 289 hours of time in such research, investigation and attending the trial of the cause for nine days. An itemized statement of the services rendered and charges therefor was attached to the petition.

This petition further alleged that after the rendition of the decree in the trial court they, Messrs. Sedlek and Pallardy retained petitioner, Caplow, to prosecute the appeal to the Supreme Court; that Caplow did so and expended 387¾ hours from December 21, 1955, to and including March 21, 1957, in conferences, research and in the preparation of the abstract of record, brief and argument for Mrs. Fox. Annexed to the petition and made a part thereof was an itemized statement of these services and the charge made therefor.

The court had granted leave to file this petition and the death of Mary V. Fox had been suggested. The same day the petition was filed an order was entered substituting Mike Coyne, administrator of the estate of Mary V. Fox, Deceased, as party defendant in lieu of Mary V. Fox and the title of the cause was so amended. The petition prayed that the plaintiff be directed to pay to petitioners the costs and expenses incurred in the prosecution of the appeal together with attorney fees and other relief in accordance with the mandate of the Supreme Court.

At the conclusion of the hearing the court entered an order finding, (a) that no alimony should be awarded the estate of Mary V. Fox from November 10, 1955, the date the original decree was rendered, until March 22, 1957, the date when the weekly payments of $100

began under the order entered that day, (b) that Mary V. Fox incurred a medical bill to Dr. Carl Weiner of $340, a hospital bill to Franklin Boulevard Community Hospital of $509.75, another medical bill to Dr. Joseph S. Abbots amounting to $550 and a bill to Ravenswood Hospital of $581.68; that these doctor and hospital bills aggregate $1981.43, (c) that Kenneth Sedlek and Charles M. Pallardy rendered legal services to Mary V. Fox in the trial of this cause for which they are entitled to be compensated and that a fair and reasonable fee for their services is $7224, (d) that Messrs. Sedlek, Pallardy, Caplow and Kelley, rendered services of value to Mary V. Fox in the appeal of this cause to the Supreme Court of the State of Illinois but are not entitled to any compensation therefor under the mandate of the Supreme Court.

The judgment order of the trial court followed these findings and directed Orville P. Fox to pay the administrator of the Estate of Mary V. Fox within 30 days said sum of $1981.43 and further directed him to pay to Messrs. Sedlek and Pallardy within 30 days said sum of $7224 for attorney fees rendered in the Circuit Court of Kane County in the trial of this cause. To reverse this judgment order Orville P. Fox appeals and the administrator, Mike Coyne, and Messrs. Sedlek and Pallardy filed their notice of cross-appeal.

■ It is contended by counsel for appellant, (1) that the death of Mary V. Fox abated all further proceedings and deprived the trial court of any power to award alimony, to direct payment of her medical bills or attorney fees, (2) that the mandate of the Supreme Court did not require the trial court to award attorney fees to Messrs. Sedlek and Pallardy and (3) that the trial court erred in granting Mrs. Fox's application for a change of venue. Counsel argue that although the mandate of the Supreme Court directed the trial

357

court to enter an order providing for the payment of the medical bills of Mrs. Fox and award her alimony and attorney fees, such alimony and attorney fees are incidental to the divorce proceeding and her death having occurred after the mandate was issued, the entire proceeding thereby abated.

In support of this contention counsel cite, among other cases, Bushnell v. Cooper, 289 Ill. 260. That case was a bill of review by the husband which sought to vacate a decree granting his wife a divorce and awarding her alimony, attorney fees and costs. It appeared in that case that the wife died about two hours before the decree was entered. In the course of its opinion the court (p. 264) said: "Marriage is a personal relation or status created under sanction of law and an action for a divorce is a proceeding brought for the purpose of effecting a dissolution of that relation. The action is one of a personal nature. In the absence of a statute to the contrary the death of one of the parties to such action abates the action, for the reason that death has settled the question of separation beyond all controversy and deprived the court of jurisdiction, both over the persons of the parties to the action and of the subject matter of the action itself. For this reason the courts are almost unanimous in holding that the death of either party to a divorce proceeding before final decree, abates the action." (Citations omitted.)

In the instant case the decree of divorce was entered on November 10, 1955. That decree insofar as it awarded Orville P. Fox a divorce was affirmed on November 26, 1956, and the mandate of the Supreme Court to that effect was filed in the trial court on December 18, 1956. The death of Mrs. Fox did not occur until April 8, 1957. What the Supreme Court held in the Bushnell case, supra, was that a proceeding for divorce abated

if the death of a party occurs before final decree. In the instant case the Supreme Court determined that the trial court erred only in omitting to award Mrs. Fox alimony, medical bills and attorney fees. Its mandate directed the trial court to determine those amounts and remanded the case solely for that purpose.

In Dinet v. Eigenmann, 80 Ill. 274, it appeared that on January 28, 1870, Elizabeth Dinet filed her bill for divorce against her husband who answered and filed a cross-bill. Following a jury trial, a decree was rendered on May 29, 1872, in accordance with the verdict, granting plaintiff a divorce. On August 7, 1872, an order was entered directing the defendant to pay plaintiff $10,000 on or before July 1, 1873, and in the event such sum was not paid by that time, such unpaid portion should bear interest at the rate of 10% per annum. The order also directed the defendant to pay his wife, or to the clerk of the court for her use, the further sum of $2,000 per year, in quarterly installments, during the remainder of plaintiff's life. The order also then directed payment of attorney fees to plaintiff's attorney and awarded an execution.

In its opinion the court stated that the decree for divorce was passed several terms before the decree for alimony was enrolled and that after the decree for alimony had been entered the plaintiff on December 7, 1872, died and at that time the alimony had not been paid. In holding that such a decree could be enforced by execution the court said: (p. 279) "When this decree for alimony was rendered the relation of husband and wife had ceased, and none of the rights of that relation continued. The legal liability of the husband for alimony was in the nature of an obligation or duty to a stranger. It was a duty imposed by the statute upon him to contribute to the support of his divorced wife; and when the amount was ascertained and fixed,

359

the right to the money became vested and as fully fixed as had the money been paid or the husband had given his note for the amount. The husband could not resume it nor did he become entitled to it on her death. It was absolutely the wife's and went to her representatives precisely as would any other money decree against any other person. It, then, follows that her executor or administrator had the right to proceed and collect it in the same manner that any other decree could be enforced after the death of the person in whose favor it was rendered."

In the Dinet case, supra, the court went on to hold that after the death of the plaintiff the suit should have been revived in the name of the administrator and that execution should have been ordered to issue in his name as no order could have been had in the name of, or for the benefit of, the deceased wife. In the instant case (as in the Dinet case) the decree of divorce as well as the order awarding Mrs. Fox temporary support was entered prior to her death. Upon her death Mike Coyne was appointed administrator of her estate and as such was substituted as party defendant. The proceeding did not abate upon her death. The order substituting her administrator as party plaintiff was duly entered and the cause properly proceeded in his name.

It is next contended by appellant that the trial court erred in awarding attorney fees to Messrs. Sedlek and Pallardy. In this connection counsel call our attention to the fact that the record discloses that Mrs.. Fox entered into a contract with her attorneys by the provisions of which they were to receive, as attorney's fees, one-third of any property of the plaintiff awarded to defendant. Counsel argue that as no property of the plaintiff was awarded Mrs. Fox by the Circuit Court and that portion of the decree having been affirmed by the Supreme Court there could be no ob-

ligation on the part of Mrs. Fox, to pay her attorneys anything. And as Mrs. Fox was not required, under the contract, to pay any sum to her attorneys, plaintiff should not be required to pay counsel for Mrs. Fox any sum which she, Mrs. Fox, would not have been required to pay them.

■ ■ The Supreme Court had knowledge of this contract and made mention of it in the opinion. That opinion also referred to Section 15 of the Divorce Act stating that it authorizes the trial court to order the payment of such attorneys' fees and suit money as may seem just and equitable, regardless of the disposition of the case and concluded that Mrs. Fox needed the services of an attorney in both the prosecution of her counterclaim and in her defense to the complaint. The court expressly held that the trial court erred in not granting Mrs. Fox reasonable attorney fees and its mandate expressly directed the trial court to order plaintiff to pay a reasonable sum to Mrs. Fox's lawyers. It is fundamental that the trial court must follow the mandate of the reviewing court.

In Thomas v. Durchslag, 410 Ill. 363, at page 365, the court said: "Where a judgment is reversed by an Appellate Court the judgment of that court is final upon all questions decided and those questions are no longer open to consideration. The court to which a cause is remanded can take only such proceedings as conform to the judgment of the Appellate Tribunal."

What the mandate of the Supreme Court required the trial court to do in the instant case was (1) determine the amount and make an award of alimony (2) ascertain the amount of medical bills and direct the payment thereof by the plaintiff, and (3) determine what is a reasonable attorney fee and order the plaintiff to pay the same. This is what the trial court did and in so doing conformed to the judgment and order of the Supreme Court.

It is finally insisted by appellant that upon this case being redocketed in the trial court the judge who presided at the original trial erred in granting the application of Mrs. Fox for a change of venue. Counsel argue that the trial judge who heard the evidence in the original proceeding acquired a knowledge of the nature and extent of the services of the attorneys representing Mrs. Fox and knew how much time her attorneys devoted to the defense of plaintiff's complaint and as the instant proceeding was a continuation of, and incidental to, the original divorce proceeding, Mrs. Fox was not entitled to a change of venue. ██ The record discloses that on March 5, 1957, Mary V. Fox filed her petition for a change of venue and prayed that the cause be tried before another judge. Other than having the case reinstated in the trial court no other steps had been taken at this time. The petition complied in every respect with the provisions of the statute. The trial court had no discretion in the matter but very promptly granted the prayer of the petition and assigned the cause to the judge who shortly thereafter entered the order for temporary alimony and heard the case. A change of venue is an absolute right available to every litigant if the application complies with the provisions of the Statute. (Des Chatelets v. Des Chatelets, 292 Ill. App. 357; McPike v. McPike, 10 Ill. App. 332.)

In support of the cross-errors assigned by appellee it is insisted (1) that alimony was payable to Mrs. Fox from November 10, 1955, the date of the original decree until the date of her death on April 8, 1957, (2) that attorney fees should have been allowed for services rendered Mrs. Fox by her attorneys in prosecuting the appeal from the trial court to the Supreme Court and (3) that the attorney fees which the trial court did award were grossly inadequate and not commensurate with the time expended and the service

362

rendered Mrs. Fox upon the trial of the cause in the Circuit Court prior to the appeal.

▮▮▮▮ Alimony is for the support of the party to whom an award is made. Upon the remandment of this cause the trial court promptly on March 22, 1957, entered an order directing appellant to pay Mrs. Fox alimony in the sum of $100 per week. Until that determination was made there was nothing due Mrs. Fox in this respect. That order was complied with and the payments thereunder were made by appellant and accepted by Mrs. Fox until her death. Both parties, during the lifetime of Mrs. Fox, acquiesced in the order entered. It is not until a definite sum is awarded and ordered payable as alimony does the party to whom the award is made have a vested interest therein. Such an order, however, is always subject to modification and may be increased or diminished as circumstances warrant. The mandate of the Supreme Court in this case did not vest any sum of money in Mrs. Fox. It simply directed the trial court to make a determination of what would be just and equitable under the circumstances and this the trial court did on March 22, 1957, apparently to the satisfaction of the interested parties. There is nothing found in this record which required the trial court to find that the administrator of Mrs. Fox's estate was entitled to collect from Orville P. Fox, $100 per week or any other amount, from November 10, 1955, to March 22, 1957.

In addition to insisting that the trial court should have determined that its award of alimony was payable retroactively from November 10, 1955, the date of the original decree, counsel for cross-appellants also insist that the trial court erred in not awarding them at least $15,000 additional attorney fees in connection with the appeal of Mrs. Fox to the Supreme Court.

The time schedule of counsel which was offered and admitted in evidence disclosed that counsel had spent 289 hours in research, office and trial work in connection with this case prior to the appeal to the Supreme Court. In perfecting the appeal and submitting the record to the Supreme Court an additional 347½ hours of time were expended by counsel. After the case was remanded and in bringing the present proceeding to submission in the trial court an additional 40¼ hours were expended. In support of counsel's contention that the trial court should have awarded attorney fees for services rendered in prosecuting her former appeal and also that the order awarding her alimony should have operated retroactively counsel cite and rely upon Bramson v. Bramson, 17 Ill.App.2d 87.

The Bramson case originated by Mrs. Bramson filing a complaint which sought to establish a one-half partnership interest in a business conducted by her husband. An answer and counterclaim were filed by her husband who sought a divorce. At the conclusion of the hearing a decree was entered on November 9, 1953, finding that the plaintiff had no partnership interest in the business but should receive permanent alimony in the sum of $400 per month and in addition $50 per week for the support of a minor son and certain other allowances for fees and expenses were made to her. The court awarded the husband a divorce on his counterclaim. Upon appeal the Appellate Court affirmed the decree as to the finding that appellant was not a partner in the business but reversed the decree insofar as it awarded the husband a divorce. Prior to the time the appeal was taken an order was entered vacating the award of permanent alimony but directing the defendant to make the alimony and support payments as directed until the further order of the court. The questions of permanent alimony, child sup-

port and attorney fees were still pending in the trial court at the time the Appellate Court decided the case and that fact was noted by the Appellate Court in its opinion. After the mandate of the Appellate Court was filed in the trial court a further hearing was had and an order entered fixing plaintiff's permanent alimony at $700 per month. This order denied her support for the minor child, refused to make the alimony retroactive to November 9, 1953, the date of the original decree and allowed $7500 attorney fees for legal services rendered upon the prior appeal and for services rendered in opposing defendant's application for leave to appeal and for work done by counsel in the trial court after the mandate was issued.

The Appellate Court approved of the amount of the alimony award but made its payment retroactive to November 9, 1953, the date of the original decree and held that under Section 15 of the Divorce Act the chancellor at the final hearing had power to allow attorney fees for services in the entire case, including services rendered on the former appeal. In this connection the court stated that there is not a word in Section 15 of the Divorce Act indicating that the legislature intended to prohibit compensation for Appellate services in procuring the reversal of an erroneous decree and concluded that the amount of attorney fees should be raised to $12,000.

In his complaint, the plaintiff, in the instant case, alleged that he had always supported his wife according to his ability and was still ready and willing to pay what the court should deem necessary and proper for her support and care and in addition to praying for a divorce requested the court to determine "what it may deem proper and necessary for him to pay for support and care of the defendant." The trial court awarded him a divorce for the fault of his wife and found that no part or portion of his assets were her property and

365

dismissed her counterclaim. The Supreme Court affirmed the decree insofar as it granted plaintiff a divorce and in so far as it found that no part or portion of his assets were her property. It remanded the case with directions to enter an award of alimony in such amount as from the circumstances of the parties and the nature of the case may be reasonable and just and to provide for the payment of her medical bills and a reasonable sum as fees to defendant's attorney.

In Bissekumer v. Bissekumer, 325 Ill. App. 257, this court cited and followed the case of Buehler v. Buehler, 373 Ill. 626, cited in the Bramson case, supra, where it is said: (p. 628) "The statute (Ill. Rev. Stat. 1939, Chap. 40, par. 16) provides that in case of an appeal by husband or wife the court in which the decree or order is rendered may require the payment of money for his or her defense pending the appeal. The appeal to the Appellate Court was taken by the wife. The statute does not authorize alimony or solicitor's fees for appellant's solicitor but only for defense pending the appeal."

There is evidence in this record that $20,000 or $25,000 would be a reasonable fee for all the services rendered by counsel for Mrs. Fox. There is also evidence that a minimum fee for participating in the trial of this case would be $150 per day and there is evidence that for the necessary research and preparation of a case of this character for trial a reasonable fee would be from $15 per hour to $50 per hour.

▆▆ What portion of the indicated time counsel spent in the preparation and trial of this case which was directed toward the contention that Mrs. Fox was entitled to some special equities in Mr. Fox's property does not appear. Perhaps no approximation thereof could be made. Assuming counsel spent 289 hours (equivalent to more than thirty-six eight hour days) in connection with the preparation and trial of this

case and that the reasonable value of counsel's services is $25 per hour, the amount of attorney fees would aggregate $7225. The trial court allowed $7224. Regardless of how computed by the trial court we are satisfied that from all the facts and circumstances shown by this record such an allowance cannot be said to be grossly inadequate but is ample, if not generous, compensation for services of every kind and character rendered Mrs. Fox by her counsel which appellant should be required to pay. The order of the trial court is in accordance with the mandate of the Supreme Court and is within the range of testimony found in this record.

There is no reversible error found in this record and the judgment order of the trial court is accordingly affirmed.

Judgment order affirmed.

McNEAL, P. J. and SPIVEY, J., concur.