BANKERS TRUST COMPANY OF NEW YORK, *ET AL.*, PLAIN-
TIFFS-RESPONDENTS, v. BERTRAM F. CRANE, DEFEND-
ANT-RESPONDENT, AND CHARLES F. CRANE, *ET AL.*,
DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 29, 1962—Supplemental Memoranda Filed
November 7, 1962—Decided March 4, 1963.

448

Before Judges GOLDMANN, FREUND and FOLEY.

*Mr. Louis E. Saunders* argued the cause for defendants-appellants.

*Mr. Irving Vogelman* argued the cause for defendant-respondent (*Mr. Henry E. Ewald, Jr.,* attorney).

*Mr. William E. Decker* argued the cause for plaintiffs-respondents.

The opinion of the court was delivered by
FOLEY, J. A. D.  This is an appeal from a portion of a judgment of the Superior Court, Chancery Division, declaring that two bequests under the will of Charles Faupel, decedent,

should be paid over to defendant-respondent, and that defendants-appellants have no interest therein. The decision of the court below is reported in *Bankers Trust Co. of N. Y. v. Crane*, 70 *N. J. Super*. 447 (*Ch. Div.* 1961).

The facts are not disputed. In 1925 Bertram Crane married Harriet Crane. Two children, Charles and William, were born of the marriage. In 1946, while they were residents of Illinois, Harriet Crane instituted a suit for separate maintenance and, pending hearing thereon, entered into an agreement with her husband dated March 4, 1946. This agreement recited that the wife agreed to amend the separate maintenance action to one charging desertion; that the husband would file an appearance, answer and stipulation that the matter be heard as a divorce matter; and that in the event a divorce should be granted, the husband would pay in lieu of alimony, stated monthly sums for the maintenance of the wife and two minor children of the marriage. Provisions were also made for the amortization of arrearages in support and the contingency of the wife's remarriage. The agreement went on to provide:

"It is further agreed by and between the parties hereto that the wife shall be entitled to one-half of any property that the husband *may acquire by inheritance, devise or bequest* and the husband does hereby assign to the wife an undivided one-half interest in any property, whether real or personal or mixed that he *may at any time in the future inherit or receive by devise or bequest* from his mother or from any other person whatsoever, excepting any future spouse and her relative, and the husband will *deliver* to the wife the said one-half interest *immediately upon his coming into possession of any property as aforesaid.*" (Emphasis added.)

Harriet Crane amended her suit in accordance with the agreement and on March 12, 1946 a decree of divorce was entered in the Circuit Court of Cook County, Illinois, which provided:

"It is further ordered, adjudged and decreed that plaintiff shall be entitled to one-half (½) of any property, real, personal or mixed, that defendant *may at any time in the future acquire by inheritance* from his mother or from any other person whatsoever, excepting any

future spouse and her relatives, and that the defendant *deliver* to plaintiff the said one-half (½) interest immediately *upon his coming into possession of any property as aforesaid.*" (Emphasis added.)

In 1951 Bertram Crane and Harriet Crane entered into a stipulation which was filed by the Illinois court and provided that Bertram Crane pay $5,000 to Harriet in full settlement of all alimony, past, present, and future. It provided also that the provision of the divorce decree quoted above should remain in full force and effect.

On February 27, 1959 Charles Faupel, Bertram Crane's uncle, died while a resident of Jersey City. His will was duly probated on March 10, 1959. After making certain specific bequests, the will provided that the residuary estate be divided into two equal parts. One-eighth of the first part was bequeathed outright to Bertram Crane. The second part was bequeathed to the executors as trustees, to be set aside as a trust fund, with directions to pay out of income and principal such monies as might be needed for the support, maintenance and medical care of testator's sister Anna F. Crane (Bertram's mother). No payments were to be made from said fund until Anna had exhausted her own money. Upon the death of Anna, the remainder of the trust fund was to be further divided. One-seventh of seven-eighths of the remainder was to be paid to Bertram Crane, or in the event of his death prior to receiving said payment, to his heirs-at-law. The other one-eighth of the remainder was to be held by testator's trustees, income to be paid Anne C. Phillip, testator's nurse, for life. Upon her death, the trustees were to pay over one-seventh of this *corpus* to Bertram Crane, or in the event of his death prior to receiving the payment, to his heirs-at-law. Anne C. Phillip is still living.

On March 12, 1959 Harriet Crane, Bertram's divorced wife, died intestate 13 days after the death of Charles Faupel. She was survived by Charles and William, her children by her marriage to Bertram Crane. Letters of administration were granted to Charles May by the Probate Court of Cook County, Illinois.

On February 7, 1961 Anna F. Crane, Bertram's mother, died leaving a will which named Bertram as executor.

This is a proceeding by the executors and trustees under the will of Charles Faupel for instructions. They are plaintiffs-respondents while Bertram Crane is the defendant-respondent. Charles and William Crane, sons of Harriet and Bertram, and Charles May, the court-appointed administrator of Harriet Crane, who died intestate, are defendants-appellants.

All parties are agreed that the estate of Harriet Crane is entitled to half the one-eighth share of the first part of the residuary estate. The court below held that the estate of Harriet Crane had no interest in Bertram's contingent shares under the second part of the residuary section of the will, and that they should be paid over to him.

The right of the estate of Harriet Crane to one-half of the disputed bequests turns upon the effect of the pre-divorce agreement made in Illinois on March 4, 1946, the divorce decree entered by the Illinois court on March 12, 1946, and the 1951 stipulation.

Because the agreement was made in Illinois the parties apparently agree that the law of Illinois must govern the interpretation and effect of the agreement, on the principle of *lex loci contractus*. *Cf. Roubicek & Zobel v. Haddad*, 67 *N. J. L.* 522, 524 (*Sup. Ct.* 1902). Although this principle was criticized in *Mayor v. Roche*, 77 *N. J. L.* 681, 682 (*E. & A.* 1909), the alternative rule that agreement should be "governed by the law with a view to which it was made," would produce the same result here. Harriet and Bertram were residents of the State of Illinois at the time of the agreement; there is no evidence they contemplated the application of any other law to the agreement; and the agreement was made in anticipation of the Illinois divorce decree and substantially incorporated therein.

The parties do not appear to question the validity of the decree or its entitlement to full faith and credit under

Article IV, § 1 of the United States Constitution. See *Sherrer v. Sherrer*, 334 *U. S.* 343 (1947).

In Illinois, where the divorce decree embodies a previous property settlement agreement, the agreement is deemed merged in the decree, although the intentions of the parties must be gathered from the language of the agreement as well as from the decree. *In re Estate of Kuchenbecker*, 4 *Ill. App. 2d* 314, 124 *N. E. 2d* 52, 54 (*App. Ct.* 1955).

Illinois distinguishes between "alimony" and "alimony in gross." *Walters v. Walters*, 341 *Ill. App.* 561, 94 *N. E. 2d* 726 (*App. Ct.* 1950), affirmed 409 *Ill.* 298, 99 *N. E. 2d* 342 (*Sup. Ct.* 1951). "Alimony" as defined in *Walters* by the intermediate appellate court is:

"* * * an allowance in a decree of divorce carved out of the estate of the husband for the support of the wife. Adler v. Adler, 373 Ill. 361, 369, 26 N. E. 2d 504; Herrick v. Herrick, 319 Ill. 146, 149 N. E. 820; Barclay v. Barclay, 184 Ill. 375, 56 N. E. 636, 51 L. R. A. 351. These and many other Illinois cases hereafter considered indicate that the term 'alimony' bears certain distinguishing characteristics. It is for an indefinite period of time and usually for an indefinite total sum. It is based upon the husband's income and the needs of the wife determined from the standpoint of the manner in which they have been accustomed to live. It is modifiable after decree when the wife's needs increase or decrease, or when the husband's ability to pay increases or decreases. This is so because it takes the form of periodic allowances which do not vest until they become due. It usually terminates upon the death of the husband, although by agreement payments may be made a charge upon the husband's estate after they become due. They are never a charge on the husband's estate in advance of the due date because they are not, prior to that time, vested. Payments of alimony from husband to wife are not based upon any consideration moving from wife to husband, but are based upon the common law duty of the husband to support his wife. 'Alimony' in this sense of the word, is modifiable." 341 *Ill. App.*, at *pp.* 567–568, 94 *N. E. 2d*, at *p.* 729.

"Alimony in gross," on the other hand, is always for a definite sum of money; the payment is always for a definite length of time; it is always a charge upon the husband's estate and has uniformly been held to be not modifiable. *Ibid.* Although it usually provides for the payment of a lump sum of money,

it may also be payable in installments. The Supreme Court of Illinois in the *Walters* case, 409 *Ill.*, at *p.* 302, 99 *N. E. 2d,* at *p.* 344, pointed out that "alimony in gross" is a term most generally applied to the amount agreed upon or determined in full or in lieu of all alimony and is frequently payable in installments.

The original Illinois statute governing alimony was enacted in 1874 (*Act of* 1874, March 10, *R. S.* 1874, *p.* 420 § 18). It was amended in 1933 (*Act of* 1933, July 13, *Laws* 1933, *p.* 490, § 1), in 1947 (*Act of* 1947, July 9, *Laws of* 1947, *p.* 818 § 1), and again in 1949 (*Act of* 1949, July 27, *Laws of* 1949, *p.* 729 § 1). The statute is set forth in 40 *Ill. Stat. Ann.* § 19. The amendment of 1949 provides:

"* * * regardless of remarriage by such party *or death of either party*, such party shall be entitled to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree." (Emphasis added.)

In *Walters, supra,* the issue was whether an Illinois divorce decree entered in 1946, embodying a pre-divorce agreement providing for alimony in gross to be paid in installments could be modified upon the remarriage of the wife, so that the husband would no longer be obliged to make the payments. The Superior Court of Cook County so modified the decree. The Appellate Court of Illinois, First District, reversed. Three opinions were rendered. The majority opinion of Justice Tuohy turned on the fact that the case involved an award of alimony in gross which vested rights in the wife at the time of the decree and was not modifiable even prior to the amendment of 1949. 341 *Ill. App.*, at *pp.* 562–578, 94 *N. E. 2d,* at *pp.* 727–734. He criticized *Banck v. Banck,* 322 *Ill. App.* 369, 54 *N. E. 2d* 577 (*App. Ct.* 1944), and *Hotzfield v. Hotzfield,* 336 *Ill. App.* 238, 83 *N. E. 2d* 605 (*App. Ct.* 1949), which held, in effect, that an award for alimony in gross payable in installments might be modified. He pointed out that these decisions were at variance with all previous decisions. The concurring opinion of Presiding Justice Nie-

meyer adopted the rationale of the majority decision but indicated that the amendment of 1949 applied to the decree which was entered in 1946. The dissenting opinion of Judge Feinberg relied on the *Banck* and *Hotzfield* cases. The Illinois Supreme Court unanimously affirmed the majority view, adopting the approach of Justice Tuohy, and expressly reserved decision on the retroactivity of the 1949 amendment.

Thus, at the time the decree in the instant case was entered in Illinois (1946) an award of alimony in gross or in lieu of all alimony, did not abate upon the remarriage of the party, but became a vested right on the entry of the decree. *Walters v. Walters, supra.* Our case, however, presents the alternate situation set out in the amendment of 1949—death of either of the parties. It is clear from the 1949 amendment that thereafter an award in lieu of alimony did not abate upon the death of either the wife or the husband. The only Illinois case on this point decided before 1949 is *Dinet v. Eigenmann, Admr.,* 80 *Ill.* 274 *(Sup. Ct.* 1875). An Illinois divorce decree had awarded the wife the sum of $10,000 and the further sum of $2,000 per year, to be paid in quarter-yearly installments. The wife died prior to any payment and her estate sued the husband. The Illinois Supreme Court affirmed the power of the trial court to allow an amount in gross satisfaction of all or a portion of alimony, and then said:

"* * *  when the amount was ascertained and fixed, the right to the money became vested and as fully fixed as had the money been paid or the husband had given his note for the amount. The husband could not resume it, nor did he become entitled to it on her death. It was absolutely the wife's, and went to her representatives precisely as would any other money decree against any other person. It, then, follows that her executor or administrator had the right to proceed and collect it in the same manner that any other decree could be enforced after the death of the person in whose favor it was rendered." 80 *Ill.,* at *p.* 279.

This language was cited in the concurring opinion of the Presiding Justice in the *Walters* case, *supra,* 341 *Ill. App.,* at *pp.* 579–580, 94 *N. E. 2d,* at *pp.* 734–735. It has also been

cited in *McKey v. Willett*, 248 *Ill. App.* 602, 606–607 (*App. Ct.* 1928), and *Fox v. Coyne*, 25 *Ill. App.* 2*d* 352, 359–360, 166 *N. E.* 2*d* 474, 477–478 (*App. Ct.* 1960).

Based upon the *Dinel* decision and the rationale of *Walters* in the remarriage situation, a decree granting alimony in gross does not abate at the time of the wife's death. She has a vested interest therein from the time of the decree and her representatives after death may sue the husband to recover the balance due. Thus, the 1949 amendment merely announced existing law.

The instant case involves the resolution of two questions: (1) Did that part of the Illinois divorce decree embodying the March 4, 1946 agreement between Bertram and Harriet award straight or periodic alimony, or did it constitute an award in lieu of alimony, (*i. e.*, alimony in gross) within the meaning of Illinois cases; and (2) if the latter, did the decree, considered as embodying the intentions of the parties, contemplate that the right of Harriet would abate at the time of her death?

Certainly the decree and the agreement relating to bequests to Bertram did not constitute alimony in the Illinois sense. This was not an award looking to the support or maintenance of Harriet. If Bertram never received a legacy, Harriet would get nothing. On the other hand, it is not clearly alimony in gross under the descriptive definition set forth in the majority decision of the Appellate Court of Illinois in the *Walters* case, *supra*, 341 *Ill. App.*, at *p.* 568, 94 *N. E.* 2*d*, at *p.* 729, for it does not involve a definite sum of money for a definite period of time. But we believe that under Illinois law it would be considered an award in lieu of alimony. Both the agreement and the decree provide initially for a monthly payment for the support and maintenance of Harriet, and for the support of the minor children. This clearly would be alimony in the Illinois sense. Later, both the decree and the agreement provide for the interest of Harriet in Bertram's legacies. At the divorce hearing in Illinois, Harriet was cross-examined by Bertram's lawyers

specifically with regard to the bequest provisions of the agreement. The following colloquy took place:

"Q. You understand if he should acquire some other property, other than by inheritance, you will have no interest in that at all? A. That's right.

Q. You have gone over this agreement very carefully with your husband and you understand all the provisions of it? A. I think so.

Q. You are willing to settle on this basis and make no further claim against your husband except what is in the agreement? A. Yes.

Q. And you will have no further claim? A. Yes."

This indicates to us that the inheritance portion of the agreement was intended as a settlement of all rights Harriet might have in Bertram's property. It is also significant that when the decree was modified in 1951 by consent decree to substitute a lump sum payment of $5,000 for the monthly payments, the portion of the original decree dealing with the inheritance provision was specifically excluded. As held in *Walters*, a decree for alimony may be modified, while a decree for payment in lieu of alimony may not. 341 *Ill. App.*, at *p.* 568, 94 *N. E. 2d*, at *p.* 729. Furthermore, the Illinois Supreme Court in the same case indicated that provisions for alimony and those for alimony in gross may be separable in the same decree, and that a different legal result would follow the designation of the separated portions. 409 *Ill.*, at *p.* 302, 99 *N. E. 2d*, at *pp.* 344–345.

We conclude that the portions of the decree alluding to Bertram's legacies were a property settlement above and apart from "alimony," and that the parties so intended.

But did the parties intend, and the decree contemplate, that Harriet's interest in Bertram's legacies would cease at Harriet's death? In finding that they did, the court below stated, "[n]othing appears in the decree which indicates that this provision should survive the death of the wife." 70 *N. J. Super.*, at *p.* 455. By the same token, the decree does not indicate the provision should not survive. A close reading of the agreement or the decree does not clearly indicate an intention of the parties, one way or the other, with regard to

the abatement of the right of Harriet upon her demise, nor did the testimony before the Illinois court at the divorce hearing. But we are convinced that the parties intended that the provision was a property settlement, and that if they concerned themselves as to what law should apply to the provision, in reasonable probability they chose the law of Illinois where the agreement was made and where the decree was entered. On that basis, we hold that Harriet had a vested right surviving her death in any interest Bertram would acquire by inheritance in the future.

The judgment below is reversed. Half of the one-seventh share of seven-eighths of the remainder of the second part which vested in Bertram upon the demise of his mother, Anna Crane, is awarded to the estate of Harriet. With regard to that portion (*i. e.*, one-seventh of the other one-eighth) wherein Bertram's interest is contingent upon his surviving Anne C. Phillip, if and when such interest does vest in Bertram he will pay over one-half of its value to the estate of Harriet.

Counsel for Harriet's estate also claim that they should have been awarded counsel fees from the entire estate of Charles Faupel since this constituted a "fund in court," within the meaning of *R. R.* 4:55–7(b). This contention is specious. The executors brought this action to obtain instructions only with regard to the three bequests to Bertram Crane; the remainder of the estate was not involved.

Even if the legacies in question are considered a "fund in court," an allowance of counsel fees is discretionary with the court. See *R. R.* 4:55–7(b). We discern no abuse of discretion in the denial of the requested allowances.

Reversed and remanded for proceedings not inconsistent with this opinion. No costs.