MARY A. LANE, Plaintiff-Appellee, *v.* JAMES A. LANE, Defendant-Appellant.

First District (2nd Division) No. 60646

Opinion filed December 31, 1975.—Rehearing denied January 29, 1976.

Weiner, Wexler & Spak and Rosenberg and Kosin, both of Chicago (Lawrence Jay Weiner, Joel S. Ostrow, and Edward D. Rosenberg, of counsel), for appellant.

Rinella and Rinella, of Chicago (Richard Rinella, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is by a former husband who petitioned for termination of alimony he was paying under the decree that divorced him from his wife. The principal grounds alleged for the termination were his remarriage and the fact that his former wife had entered a convent to become a nun. He contended that payment of alimony to her under these circumstances violated rights secured him by our State and Federal constitutions. After a hearing, the trial court denied the petition.

Two issues are presented for our review. The first is whether the trial court erred in ruling that there was no change in the circumstances of the parties that required termination of alimony. The second is whether compelling a former husband to pay alimony to his former wife after she enters a convent to become a nun creates an impermissible connection between church and State in violation of the first and fourteenth amendments to the United States Constitution and violates article I, section 18 of the Illinois Constitution of 1970. These issues arise from the following facts.

I.

Mary A. Lane and James A. Lane were married in Waterloo, Iowa, on June 6, 1949. They lived as man and wife until about January 12, 1969, when James deserted the marital home in Park Forest, Illinois. During their life together, three children were born to them. Cheryl, in 1952;

Scott Michael, in 1953; Mariann, in 1955. In August 1970 Mary Lane was divorced from her husband; Cheryl was then married, Scott Michael and Mariann were then 15 and 14 years of age, respectively. The terms of the decree provided for payment of child support, assignment and transfer of interests in personal property, child custody and visitation rights, and payment to Mary Lane, by James of $250 per month as alimony. The payments were to be made semimonthly until further order of court; and the amount was based on a determination that James then had a net monthly income of $1,150. The alimony was paid in accordance with the provisions of the decree.

On November 19, 1972, Mary Lane entered a convent in Milwaukee, Wisconsin as a postulant and began a period of formation known as a postulancy of six months; immediately thereafter she began a one-year canonical novitiate. Upon learning of this fact, James Lane filed a petition in which he alleged that his former wife had become a nun; that he had paid her a total of $9,750 in alimony; that he had remarried since their divorce; that their youngest daughter was emancipated, maintaining her own apartment; that he needed relief from the alimony provisions of the divorce decree; and that her entry into the convent required her to transfer all monies he paid her to the religious order or some other religious body, making her a remarried woman for all practical purposes and thus necessitating a termination of alimony.

Mary Lane appeared and filed an answer in which she admitted entering a convent, but denied that she was a nun. She alleged she was a novice who was undergoing a period of formation; that only after she had complied with other requirements would she qualify to take the vows of poverty, chastity and obedience; that in the meantime, she was responsible for her medical, dental, and incidental expenses of about $185.50 each month for which she needed her alimony. In later discovery proceedings, she answered interrogatories and stated that since her divorce, she received $5000 as proceeds of an inheritance and invested that sum in government bonds.

Thereafter, the cause came for hearing on the petition and answer, as amended. The parties stipulated to the testimony the convent's Mother Superior would give in the cause were she to appear as a witness. Then, the court heard Mary Lane as an adverse witness, James Lane, Lane's second wife and Scott Michael who was then an emancipated young adult living with his father but contributing to a part of his expenses. After admitting the evidence, receiving exhibits, and listening to arguments of counsel, the trial court entered an order in which it found that since entry of the divorce decree, no change of circumstances had occurred which required termination of the alimony payments. It ruled that

the provisions of the decree requiring Lane to pay alimony to his former wife after she entered a convent did not violate any constitutional right he had under either the State or Federal constitutions. The petition for termination was denied, attorneys' fees were awarded Mary Lane and the court determined that its order was final. Accordingly, James Lane appeals and brings to this court the two issues he asks us to resolve.

## II.

The first one has been the subject of a long line of decisions by reviewing courts of this State. (See *Stillman v. Stillman*, 99 Ill. 196; *Hilliard v. Anderson*, 197 Ill. 549, 64 N.E. 326; *Lay v. Lay*, 204 Ill.App. 511; *Green v. Green*, 21 Ill.App.3d 396, 315 N.E.2d 324.) In the process, the rule has been evolved that modification of alimony provisions of a divorce decree rests in the sound judicial discretion of the trial court, and unless the record shows an abuse of discretion, an order that refuses to modify an obligation to pay alimony will not be disturbed on review. (*Hoover v. Hoover*, 307 Ill.App. 590, 30 N.E.2d 940.) These same courts have said that to justify modification of a divorce decree and terminate the payment of alimony, there must be proof that after the decree, there was a material change in the condition and circumstances of the parties; it must be shown that such a modification is equitable. *Cole v. Cole*, 142 Ill. 19, 31 N.E. 109; *Thomas v. Thomas*, 18 Ill.App.3d 673, 310 N.E.2d 432; *Gregory v. Gregory*, 52 Ill.App.2d 262, 202 N.E.2d 139.

■■ In the case before us, the trial court heard evidence which proved that after they were divorced, James Lane paid his former wife $9,750 in alimony; that since the decree, there had been a slight increase in his net income and a corresponding increase in his expenses; that all the children of the parties had become emancipated, one was living with Lane but paying for part of his support; that Lane's second wife contributed $7,000 annually to the family's gross income; that Mary Lane had entered a convent, and was now a novice who was working toward the taking of religious vows; that she had personal needs which totaled about $185.50 each month; and that since the divorce, she received $5,000 from an inheritance and had $500 in a checking account.

In our judgment, these facts did not prove a difference in the material needs of the parties or that the termination of alimony requested by James Lane would have been equitable. (See *Bowman v. Bowman*, 11 Ill.App.3d 719, 298 N.E.2d 339; *Pearlman v. Pearlman*, 131 Ill.App.2d 388, 266 N.E.2d 388; 24 Am.Jur.2d *Divorce and Separation* § 665 (1966); Annot., 18 A.L.R.2d 10 (1951).) Therefore, the trial court did not err in ruling that there had been no change in the circumstances of the parties that required termination of the alimony payments James Lane was mak-

ing to his former wife. *Blowitz v. Blowitz*, 75 Ill.App.2d 386, 221 N.E.2d 160; compare *Loucks v. Loucks*, 130 Ill.App.2d 961, 266 N.E.2d 924.

## III.

The second issue has never been resolved by a reviewing court of this State. In fact, as far as we can ascertain, it has never been presented to any court in this country. There is novelty in the inquiry whether the constitutional rights of a former husband are infringed by a divorce decree that requires him to pay alimony to his former wife after she enters a convent. Novelty of an issue, however, does not preclude its resolution by resort to principles of statutory and constitutional law that are well established, and with which we are familiar.

■■■ To begin with, it is established in our law that alimony is founded on the natural and legal duty of a husband to support his wife. (*Maginnis v. Maginnis*, 323 Ill. 113, 153 N.E. 654; see *Gold v. Gold*, 17 Ill.App.3d 11, 308 N.E.2d 75.) This concept of duty consistent with principles of equality between the sexes, has been enlarged so that "[w]hen a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband * * * or any of them as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just * * *." (Ill. Rev. Stat. 1973, ch. 40, par. 19.) Therefore, under our law, either a husband or a wife can be ordered to pay alimony. (See *Planters Bank & Trust Co. v. Hite*, 130 Ill.App.2d 666, 263 N.E.2d 498; compare *Hursh v. Hursh*, 26 Ill.App.3d 947, 326 N.E.2d 95.) And as is true in most American jurisdictions, a court in our State that decrees the payment of alimony may, from time to time, as shall appear reasonable and proper, make alterations in the provisions with regard to such payments. (*Warren v. Warren*, 40 Ill.App.2d 286, 189 N.E.2d 401; *MacKinlay v. MacKinlay*, 18 Ill.App.2d 355, 152 N.E.2d 213 (abstract opinion); see Ill. Rev. Stat. 1973, ch. 40, par. 19.) In this case it was decreed, when the Lanes were divorced, that the former husband was to pay his former wife $250 in monthly alimony, until further order of the court. Therefore, Mary Lane was entitled to the alimony payments until there was an alteration of the decree. *Baker v. Baker*, 28 Ill.App.3d 680, 329 N.E.2d 408; *Escott v. Escott*, 26 Ill.App.3d 417, 325 N.E.2d 395; *Dubin v. Dubin*, 25 Ill.App.3d 323, 323 N.E.2d 152.

In urging that in this case the decree should be altered, James Lane argues that requiring him to pay his former wife alimony after she entered a convent denies him equal protection of the laws in violation of article I, section 18 of the 1970 Illinois Constitution and the equal protection clause of the fourteenth amendment to the United States Consti-

tution. He insists that compelling him to make payments violates his rights under the establishment and free exercise clauses of the first amendment to the United States Constitution because through them he is forced to support the religious order to which his former wife now belongs. Lane's claimed deprivation of equal protection under the State Constitution is based on his contention that alimony was being required of him because of his sex, he being a former husband; deprivation under the equal protection clause of the fourteenth amendment is based on his contention that former husbands whose wives enter the labor market and become gainfully employed are relieved of alimony burdens while he is required to continue supporting his former wife even after she enters a convent. Thus, Lane equates a divorced woman's entry into a convent with a woman's entry into the labor market. He points out that under the administration of the religious order into which his former wife had entered, she will be provided with her personal needs and be in the position of a working woman who is able to care for herself.

We consider these arguments unsound. The purpose of the equal protection clause of the 1970 Illinois Constitution is to prohibit discrimination on account of sex. (*People v. Ellis*, 57 Ill.2d 127, 311 N.E.2d 98; Ill. Const. (1970), art. I, § 18.) As we have already said, the obligation to pay alimony in this State does not depend on sex. (See Ill. Rev. Stat. 1973, ch. 40, par. 19; *Planters Bank & Trust Co. v. Hite*, 130 Ill.App.2d 666, 263 N.E.2d 498; *Hursh v. Hursh*, 26 Ill.App.3d 947, 326 N.E.2d 95.) For this reason, alimony provisions of a divorce decree do not violate this guarantee of equal protection.

■■ The equal protection clause of the fourteenth amendment prohibits discrimination against classes of similarly situated persons. (*New York State Association for Retarded Children, Inc. v. Rockefeller* (E.D. N.Y. 1973), 357 F.Supp. 752.) This clause guarantees that no person or class of persons will be denied the same protection of the laws which in life, liberty and enjoyment of property is enjoyed by similarly situated persons or classes in like circumstances. (*Truax v. Corrigan* (1921), 257 U.S. 312, 66 L.Ed. 254, 42 S.Ct. 124; *Purifoy v. State Board of Education* (1973), 30 Cal.App.3d 187, 106 Cal. Rptr. 201.) Without professing to know exactly what happens to a woman who enters a convent, we think it obvious that postulants, novices and nuns of religious orders constitute a class quite different from that made up of women who enter the labor market and become gainfully employed. (See Fanfani & O'Rourke, Canon Law for Religious Women, 163, 167-68, 12-13 (Priory Press 1961); 23 Encyclopaedia Britannica *Women's Religious Orders* 630-632; 66 Am.Jur. 2d *Religious Societies* §§ 36-42 (1973).) Therefore, a State rule of law

that treats these classes differently does not impose an unconstitutional distinction.

■■■ The argument that Lane's continued payment of alimony to his former wife compels him to support a religion in violation of his constitutional rights is refuted by the nature of the payments. Alimony is ordered for the support of the divorced spouse. (*Adler v. Adler*, 373 Ill. 361, 26 N.E.2d 504; *Herrick v. Herrick*, 319 Ill. 146, 149 N.E. 820.) By operation of the decree which awarded it and fixed the terms of its payment, Mary Lane becomes entitled to the money as and when it periodically accrues. (*Ellingwood v. Ellingwood*, 25 Ill.App.3d 587, 323 N.E.2d 571; see *Fox v. Coyne*, 25 Ill.App.2d 352, 166 N.E.2d 474; *Hallett v. Hallett*, 10 Ill.App.2d 513, 135 N.E.2d 224.) Thus, periodic payment by James Lane discharges his fixed legal obligation to his former wife. (See *Shapiro v. Shapiro*, 113 Ill.App.2d 374, 252 N.E.2d 93.) If, after receiving a payment, she pays or donates the money to the convent in whole or in part, as in this case, for the necessities of life, her act would not be a support of the religious order by her former husband. The use of alimony in this manner would not convert into a religious purpose the secular one that was intended when the alimony provisions were incorporated into the decree (compare *Epperson v. Arkansas* (1968), 393 U.S. 97, 21 L.Ed.2d 228, 89 S.Ct. 266); nor would payment or donation of the alimony payments advance or inhibit religion (compare *McGowan v. Maryland* (1961), 366 U.S. 420, 6 L.Ed.2d 393, 81 S.Ct. 1101); nor would their use, even within the convent, involve excessive government entanglement with religion (compare *Walz v. Tax Commission* (1970), 397 U.S. 664, 25 L.Ed.2d 697, 90 S.Ct. 1409). Therefore, we conclude that compelling James Lane to pay alimony to his former wife after she entered a convent to become a nun did not deny him equal protection of the laws under either the State or Federal constitutions nor create an impermissible connection between church and State in violation of the first amendment to the Constitution of the United States. The judgment is affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.