(No. 25335.—■■■■■■■■

SIDNEY ADLER, Appellee, *vs.* SARA ADLER *et al.* Appellants.

*Opinion filed February 21, 1940—Rehearing denied April 10, 1940.*

SHAW, J., took no part.

PAM, HURD & REICHMANN, and TAYLOR, MILLER, BUSCH & BOYDEN, (ALEXANDER F. REICHMANN, FRANCIS X. BUSCH, and LESTER G. BRITTON, of counsel,) for appellants.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (FLOYD E. THOMPSON, and SAMUEL W. BLOCK, of counsel,) for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Sidney Adler, appellee, hereafter referred to as the petitioner, and Sara Adler, by remarriage now Sara Cowley Brown, one of the appellants, hereafter referred to as the respondent, were married in 1895 and lived together until 1920. In November, 1922, petitioner began an action for divorce and charged respondent with desertion. She answered, denying the charge, but at the hearing offered no evidence. On November 29, 1922, a decree of divorce was entered and the question of alimony was reserved for future consideration. The December 2, following, another decree was entered which stated provision had been made for quarterly payments of $1150 to respondent during her life and ordered petitioner to make such payments. In May, 1936, petitioner applied, under section 18 of the Divorce act, (Ill. Rev. Stat. 1939, chap. 40, par. 19,) to the court for a modification of the decree, alleging as grounds therefor, respondent's remarriage and a change in his financial condition and earning capacity. Respondent answered, admitted her remarriage but contended that because of the various contracts entered into between the parties, her remarriage did not furnish a basis for modification. She alleged the inability of her present husband to support her

and denied there was any change in petitioner's financial condition or in his ability to meet the payments.

On December 30, 1920, the parties executed two instruments described as a trust indenture and a trust agreement. By the trust indenture, certain real estate was conveyed by Adler to three trustees to hold in trust during the life of respondent. By the provisions of the two instruments respondent was to receive for life quarterly payments of $1350. The trustees were given power to manage and rent the real estate, and, after deducting taxes and other charges, pay to respondent the quarterly amounts; the balance was to be paid to petitioner. It is agreed that the contracts were not made in contemplation of divorce and petitioner does not seek any relief from the quarterly payments as therein provided. Reference to these instruments is necessary only because they were referred to in two instruments executed on December 1, 1922, and which are described in this proceeding as the supplemental trust indenture and the supplemental trust agreement. In the latter instruments provision was made for the payment from the income of trust property to respondent for her life, of an additional $1150 per quarter. In the decree of December 2 petitioner was ordered to pay respondent the amounts stated in the two agreements. The trial court entered a decree approving the master's report and modified the decree of December 2, 1922, by canceling the quarterly payments of $1150.

The question presented is whether the provision in the supplemental instruments of December 1, 1922, and the decree of December 2 for the quarterly payment of $1150, was an allowance of alimony and subject to modification under section 18 of the Divorce act, or was it a final settlement in gross, of all the interest of the parties arising out of the marital relation, and, therefore, beyond the power of the court to modify or change. The appeal has been brought direct to this court because the validity of the act of 1933 amending section 18 of the Divorce act is ques-

tioned. Laws of 1933, p. 490; Ill. Rev. Stat. 1939, chap. 40, par. 19.

The trust created by the trust indenture of December 30, 1920, was to terminate upon the death of the respondent and the trustees were then directed to reconvey the real estate to petitioner or to his heirs or assigns. The trust agreement of the same date stated the two instruments should be construed as one, the same as if the provisions of the trust agreement were set forth in the trust indenture. Respondent agreed that the provision for her support and maintenance was adequate and she accepted the same in full of all claims for such support and maintenance, except as otherwise provided. The exception, which gave her the right to make further claim for support and maintenance was, in the event petitioner should subsequently commence an action for divorce the respondent had the right to set up by answer or cross-bill any defense that then existed, or might thereafter arise, and she also had, "the option either to rely upon the provision for her maintenance and support now made, or to demand in such proceeding further or other alimony, solicitor's or attorney's fees, to be determined by the court in such proceedings."

Sara Adler agreed not to begin any action for separate maintenance or divorce upon any then existing ground or which might thereafter arise; in the event she broke this covenant, she was not entitled to make claim for alimony, solicitor's or attorney's fees, and the provisions made for her in the trust indenture and agreement were to be taken in full of all claim for alimony, solicitor's or attorney's fees. Respondent agreed she held no money demands against petitioner, had no right in the personal property in the residence, had no right or title in any real or personal property owned or held by him, other than as provided by this trust indenture and agreement "and such as she may be entitled to have or make after the death of said first party as his widow, devisee or legatee, and whatever claims she may

have as beneficiary under any insurance policy or policies on the life of said first party." Petitioner agreed if the net income from the property described in the trust indenture was not sufficient to pay respondent $1350 per quarter as provided, he would pay such deficiency. They agreed that neither instrument required them to live separate and apart.

The supplemental trust indenture of December 1, 1922, related the parties had been divorced by a decree entered November 29, 1922, and refers to the trust indenture of December 30, 1920, by pointing out the provisions therein made to secure the quarterly payment of $1350 to respondent for her life. It then recites: "Whereas, Sidney Adler and Sara Adler have agreed that additional quarterly payments are to be made to said Sara Adler by said trustees in the sum of eleven hundred and fifty dollars ($1150) quarterly, so that said Sara Adler shall be paid the sum of twenty-five hundred dollars ($2500) per quarter in lieu of thirteen hundred and fifty dollars ($1350) as now provided by said trust indenture. * * * Now, therefore, in consideration of the premises and the * * * relinquishment of alimony, dower and all other claims and demands to which said Sara Adler is now or might hereafter become entitled, * * * said Sidney Adler does hereby agree with said Sara Adler and the said trustees, and their respective successors in trust, * * * that the said trustees shall pay to the said Sara Adler * * * the further sum of eleven hundred and fifty dollars ($1150) per quarter," and any surplus of the net income was to be paid to petitioner. The quarterly payments of $1350 and $1150 were secured by lien on the real estate and were to be considered as "a continuing lien upon the *corpus* of the premises hereinbefore described and the buildings and improvements thereon, as well as on the rents, issues and profits thereof," and in the event of default of any of the payments either in the lifetime of petitioner or after his death, respondent was given authority to foreclose the lien by appropriate action in chan-

cery. As a concurrent remedy, respondent could sue at law for any defaulted payment.

It was covenanted that the trust indenture of December 30, 1920, should remain in full force, extend to and secure the additional payments (of $1150 per quarter) to the same extent "as if the said additional payments to be made as aforesaid had been originally mentioned and included in the first trust indenture," etc.

The supplemental trust agreement recites the execution of the trust indenture and trust agreement of December 30, 1920, and, in general terms, refers to the quarterly payments to be made respondent and the fact that under those agreements respondent retained, "any right, title, claim or interest which she may be entitled to have or make after the death of said Sidney Adler as his widow, devisee or legatee." It recited that "for the purpose of making full and final provision for the maintenance and support of said Sara Adler and for alimony, dower and right of dower, and all claims and property rights, and rights of every kind and nature of second party against first party a supplemental trust indenture has been entered into of even date herewith amending the trust indenture first above mentioned, so that the same shall cover, extend to and secure additional payments of $1150 quarterly." The supplemental trust indenture and the supplemental agreement were to be construed as one instrument, and respondent acknowledged the additional quarterly payments (of $1150) were "in full settlement of all her alimony, dower and right to dower, and all other rights, claims and demands against first party, and particularly in full settlement of all the property rights in any property, real or personal, standing in his name, which still remained in her after the execution of said trust indenture and agreement of December 30, 1920. And second party does hereby forever release and discharge first party from all claims or demands which she may have against him, except such as are secured to her by the terms of said

trust indenture of December 30, 1920, said supplemental trust indenture of even date herewith and this supplemental agreement." It was agreed the quarterly payment of $1350 under the instruments executed December 30, 1920, and the additional payment of $1150 under the agreements of December 1, 1922, should, at all times, be treated as distinct and independent obligations. The termination, for any reason, of the obligation to pay the sum of $1150 should in nowise, and under no circumstances, affect, or terminate, the rights of respondent to receive the $1350 quarterly as provided in the first trust agreement. To that end, each and every of the provisions of the trust indenture and trust agreement of December 30, 1920, necessary for the enforcement of the rights of said Sara Adler, were to be continued in force. If the supplemental agreement and indenture of even date, (December 1, 1922,) should at any time thereafter become inoperative for any reason, except by written consent of the parties or by reason of the death of the respondent, then the responent was to have all the rights she possessed prior to the execution of said supplemental agreement and, prior to the entry of the decree of divorce.

Petitioner agreed to be personally responsible for the payment of any deficiency of any portion of either the $1350 or the $1150 quarterly payment during his life. This obligation, as to the $1350 quarterly payment, was to continue during the lifetime of respondent, even though she survived petitioner. The payment of such deficiency after his death was made a charge on his estate, but was not extended to include the $1150 quarterly payment. Any subsequent marriage of respondent was not to affect the provisions of the trust indenture, the supplemental trust indenture or the supplemental trust agreement.

The decree of December 2, 1922, entered by the written consent of the parties, refers to the entry of decree of divorce on November 29, 1922. The trust indenture and trust

agreement of December 30, 1920, were submitted to the court and it found the instruments were not made in contemplation of divorce and should not be affected by the decree of divorce or by this decree. The court further found that the parties had reached an agreement whereby respondent was to receive for life an additional payment of $4600 per year payable in equal quarterly installments, the payments had been secured by the supplemental trust indenture and agreement dated December 1, 1922, the provisions in the supplemental trust indenture and agreement were intended to be "in full of all claims and rights of dower, alimony, property and other rights and claims which the said Sara Adler now has or may hereafter have against said Sidney Adler  *  *  *  and that Sara Adler is willing to accept the same in full of such claims and rights of dower, alimony, property and other rights and claims excepting always her rights under said trust indenture and trust agreement dated December 30, 1920." The court found the payments were to continue even though Sara Adler should thereafter remarry.

It was ordered in the decree of December 2 that the supplemental trust indenture and supplemental trust agreement be confirmed and petitioner "shall well and truly promptly make all of the payments of money and shall well and truly keep and perform all and every of the covenants and agreements on his part to be performed in and by the terms of said supplemental trust indenture and supplemental agreement dated December 1, 1922,  *  *  *  for the benefit of said Sara Adler," and that they, "shall constitute and be received by said Sara Adler as and for her permanent alimony and as a complete and final settlement of all her rights of dower, alimony, property and other rights and claims against said Sidney Adler. No subsequent marriage of said Sara Adler shall affect this decree or any or all of the indentures or agreements in this decree referred to."

After the execution of the trust indenture and agreement of December 30, 1920, petitioner remarried. On December

31, 1924, he executed an instrument directing the trustees, named in the previous trust indentures, to pay Dorothy Adler, his then wife, any net income remaining after payment of $10,000 annually to respondent. She contends that assignment has left petitioner without any beneficial interest in the litigation, and, therefore, he cannot maintain a petition for modification. The decree of December 2, 1922, contained an order upon petitioner to make the payments, and the duty rested upon him personally to make such payments without respect to the income from the trust property; furthermore, the income assigned to his wife Dorothy, was the excess above $10,000, and the reduction of the $10,000, in any amount, would be to the benefit and interest of petitioner.

Alimony is an allowance in a decree of divorce, carved out of the estate of the husband for the support of the wife. (*Adams* v. *Storey,* 135 Ill. 448; 19 Corpus Juris 201.) Generally, when a divorce is awarded a husband on the fault of the wife, the latter will not be awarded permanent alimony. (*Spitler* v. *Spitler,* 108 Ill. 120; *Boylan* v. *Boylan,* 349 id. 471.) The Divorce statute of this State has been construed to allow alimony to an erring wife, where all the facts and circumstances warrant the court in so doing; the objective, in the exercise of such right, is to prevent the imposition of an unjustifiable hardship in a given case that would ensue if the general rule was applied. (Ill. Rev. Stat. 1939, chap. 40, par. 19; *Deenis* v. *Deenis,* 65 Ill. 167; *Spitler* v. *Spitler, supra.*) Husband and wife, parties to a divorce action, may, as an act entirely separate and apart from such action, contract in respect to her future support. When they agree to and do incorporate the contract in the decree of divorce as an adequate provision for alimony, the contract becomes merged in the decree. *Herrick* v. *Herrick,* 319 Ill. 146.

By the terms of the instrument executed December 30, 1920, respondent released all right, title, claim or interest in any real, or personal property, owned by petitioner in-

cluding the personal property in the residence, saving and excepting, however, the interest created in the income from the real estate described in the instruments; and also excepting such rights she would have as a widow, devisee or legatee or beneficiary in insurance policies on petitioner's life. Under the law in force at that time, and also on December 1, 1922, respondent's rights in petitioner's property as a widow would have been limited to an award and interest in personal property, dower and homestead. Respondent's inchoate right in an award and her prospective interest in petitioner's personal property as his widow were cut off by the divorce decree of November 29, 1922. The homestead interest was released prior to the divorce action as a part of the consideration for the execution of the trust indenture of December 30, 1920. The divorce was granted on respondent's fault and by operation of section 14 of the Dower act all her inchoate right of dower was thereby terminated. When the supplemental trust indenture and agreement were executed December 1, 1922, respondent's interest in petitioner's property, both present and inchoate, had been terminated except as to the right to alimony which the decree of November 29 had reserved for future consideration. The reservation to respondent of a right to claim as a legatee or devisee under petitioner's will, as provided in the instruments of December 30, 1920, was in reference to a mere expectancy and could not furnish any consideration for the quarterly payments of $1150 under the instruments of December 1, 1922. There are provisions in the supplemental trust indenture and agreement which evidence an intent and understanding of the parties that they were contracting solely as to respondent's alimony. The petitioner authorized the payment of quarterly amounts from the income of the real estate in consideration of respondent's relinquishment of alimony, dower and all other claims and demands and she accepted the same in full of such rights. The fact that the instruments referred to dower and other claims is immaterial, for such rights had

been previously terminated. Respondent urges it was a settlement in gross and therefore not subject to modification. The answer is that the number of quarterly payments petitioner would be required to make was uncertain for it was dependent upon the date of death of respondent, and not upon their total reaching a predetermined sum.

It was lawful for petitioner and respondent to specify in the supplemental trust indenture and agreement of December 1, 1922, that the quarterly payments to respondent should continue for her life regardless of her subsequent marriage. Respondent could rely on the contract for the payment, and in the event of a breach in any of its parts, could bring appropriate action for the enforcement of its provisions, or she had the right with the approval of the petitioner, to have a consent decree entered adopting the provisions of the agreement. The latter action having been taken, the provisions for quarterly payments to respondent as provided in the supplemental trust indenture and trust agreement of December 1, 1922, became merged in the decree. The fact that the decree adopted the terms of the agreement did not destroy or affect the power of the court to alter such provisions when a change of circumstances justified a modification. (*Maginnis* v. *Maginnis,* 323 Ill. 113; *Herrick* v. *Herrick, supra; Camp* v. *Camp,* 158 Mich. 221, 122 N. W. 521.) At the time of the execution of the trust indentures and agreements and the entry of the decree of December 2, section 18 of the Divorce act expressly authorized a modification in the allowance of alimony under proper circumstances. The action of the parties, incorporating the indentures and agreements into that decree, must be deemed to have been made in view of that statute, and such statute, by implication, became a part of the decree. *Maginnis* v. *Maginnis, supra; Herrick* v. *Herrick, supra.*

Respondent urged that because of the statement in the decree providing her remarriage should not be a cause for modification of the consent decree, the court was deprived

of power to subsequently modify it. Grounds for divorce, payment of alimony and modification of the divorce decrees are regulated by statute. A court, when dealing with such matters, is exercising powers granted by the legislature and cannot, by incorporating such a provision in its decree, divest itself of the power to modify contrary to the legislative will. *Wallace* v. *Wallace*, 74 N. H. 256, 67 Atl. 580; *Ward* v. *Ward*, 48 R. I. 60, 135 Atl. 241; *Reynolds* v. *Reynolds*, 53 id. 236, 166 Atl. 686; *Wilson* v. *Caswell*, 272 Mass. 297, 172 N. E. 251.

Twenty-four days after the signing of the consent decree, petitioner, respondent and the trustees executed another instrument, wherein it was recited that a doubt had arisen in regard to the construction of specified portions of the supplemental agreement of December 1, 1922, and the purpose of such instrument was to clarify such ambiguities. The matters clarified were in reference to specified duties of the trustees in respect to the use of insurance money in the event the buildings on the property should burn, payment of taxes and the right of respondent in the event taxes were not paid by the trustees. A second clarification agreement was executed which referred to the character of respondent's lien and to the property it covered. Each of them reaffirmed the contracts. Respondent contended the execution of these two instruments constituted a new agreement embodying the terms of the previously executed trust indentures and agreements. The supplemental trust indenture made provision for the clarification instruments to be subsequently executed. The fact that, when executed, they ratified and confirmed the prior instruments does not alter the effect that had been given to them by merging them in the decree. The subject matter of the clarification instruments was in reference to the provisions of the decree.

The questioned provision of the amendment of section 18 of the Divorce act is the proviso "that a party shall not be

entitled to alimony and maintenance after remarriage." It is urged that if this clause is given effect, and respondent's right to alimony taken away by reason of her remarriage, it takes from her vested rights contrary to the constitutional guaranties.

Prior to the amendment, the general rule adopted by the courts was, that remarriage of a woman, who was receiving alimony from her former husband, was such a change of condition as to authorize a modification of the decree to the extent of canceling the alimony payments. (*Stillman* v. *Stillman,* 99 Ill. 196; *Maginnis* v. *Maginnis, supra.*) The amendment merely adopted the general rule and made it mandatory upon the court to cancel alimony payments in all cases where the recipient had remarried, regardless of whether or not there had been a change in the financial condition of the former husband. Respondent's rights to quarterly payments came from the provisions of the decree of December 2, for the contractual provisions in reference to such payments had been merged in that decree. When the decree was entered, section 18 conferred the power upon the court to modify it under proper circumstances, and respondent's rights to quarterly payments as fixed by the decree were subject to be changed by the court on proper showing. Her rights became fixed as to accrued payments, but as to all payments maturing in the future she had no vested right. The trial court did not undertake to give the statute a retroactive effect for the decree made the modification effective as of the date of the filing of the petition. The amendment of 1933 to section 18 of the Divorce act does not affect any vested rights of respondent.

Furthermore, the chancellor of the circuit court did not err in holding the estate and income of petitioner had suffered material impairment to an extent rendering further payments of alimony inequitable. This was a question of fact, and the master and the chancellor were in accord in believing the evidence supported the petitioner. Our in-

374

spection of the same evidence convinces us the master and chancellor were right in believing therefrom that the estate and income of the petitioner had suffered very material impairment, and it would be inequitable to continue the payments of alimony.

The trial court was correct in holding the provision of the quarterly payment of $1150, as provided for in the supplemental trust indenture and agreement of December 1, 1922, was merged in the decree and, as such, became a provision for alimony and subject to modification. Either the remarriage of respondent, or the material impairment of the estate and income of petitioner, required a cancellation of all payments of alimony maturing after the date of the filing of the petition.

*Decree affirmed.*

Mr. JUSTICE SHAW took no part in this decision.