**Audrey I. Ganzer, Plaintiff, Counter-Defendant, Appellee, v. Floyd F. Ganzer, Defendant, Counter-Plaintiff, Appellant.**

**Gen. No. 53,244.**

First District, Second Division.

May 27, 1969.

Holton, Tews & Abbey, of Chicago (Herbert R. Tews and Herbert J. Theisen, of counsel), for appellant.

Dom J. Rizzi and Frank M. Greenfield, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

This was an action for divorce instituted by Audrey I. Ganzer (hereinafter referred to as "plaintiff") on the grounds of physical cruelty. Her husband, Floyd F. Ganzer (hereinafter referred to as "defendant"), filed an answer denying the allegations of cruelty contained in the complaint. He also filed a counterclaim for divorce in which he alleged plaintiff was guilty of adultery.

After a trial without a jury, the trial court held that plaintiff failed to establish the ground for divorce alleged in her complaint, that she had committed adultery at various times during the marriage, and that defendant should be granted a divorce as prayed in his counterclaim. The court entered a decree granting defendant a divorce, and providing that defendant pay alimony to plaintiff of $50 per week, that he also pay plaintiff's attorney fees of $1,500, and that plaintiff be allowed a one-half interest in the family home. Custody of the minor daughter born to the parties during the marriage was awarded to defendant. Defendant appeals from those portions of the decree granting plaintiff alimony, attorney fees and the one-half interest in the family home.

Plaintiff and defendant were married in October 1954, and lived together as husband and wife until they separated in February 1967, when plaintiff moved into a basement apartment in the family home. The record reveals that the husband was self-employed and conducted his business out of the family home, which the parties built during the marriage and which they owned in joint tenancy. It also appears that plaintiff, prior to and during the marriage, had been employed as a waitress and as an organist in a cocktail lounge; that she gave defendant money which she earned which was put toward the building of the family home, and that she aided in her husband's business during the marriage by answering telephone calls. Plaintiff was not employed at the

time of these proceedings. The minor daughter was born to the parties in October 1955.

After plaintiff filed this action April 26, 1967, defendant kept a written record of her activities on approximately 200 occasions. Defendant's evidence reveals, and plaintiff does not deny, that plaintiff left the house in the late afternoon or the early evening on an almost daily basis and arrived home between 2:00 and as late as 5:30 on the following morning. Such nocturnal activities continued up to the time of the trial.

A short time after the complaint had been filed, defendant engaged private investigators to keep plaintiff under surveillance. The investigators learned that plaintiff had been seeing Patrick King on an almost daily basis, and that from May 15, 1967, until the time of trial, she had been in the King apartment on at least 52 occasions, staying there on each occasion from the late evening until 3:00 to as late as 5:00 the following morning. The evidence reveals that during the periods of time plaintiff was in the apartment, lights were switched on and off, and at times there was only what appeared to be a "night-light" illuminating the apartment. It also appears that on several occasions prior to going to the apartment, plaintiff and King spent time drinking in a cocktail lounge, during which times King was observed fondling and caressing plaintiff. The investigators also took photographs, which were admitted into evidence, showing plaintiff and King alone in the King apartment drinking cocktails.

Plaintiff admitted being in the King apartment on a daily basis, but stated that she was unable to remember the exact dates and hours spent there. She testified that during the periods of time she was in the apartment there were third parties present, and that the time was spent playing cards.

■■ We are in agreement with defendant's contention that plaintiff is not entitled to permanent alimony.

397

At common law a wife, whose husband was granted a divorce due to her misconduct, was not entitled to alimony. This rule was relaxed by statute, so that the court, in its discretion and under proper circumstances, may grant alimony to an errant wife. (See Ill Rev Stats 1967, c 40, par 19; Boylan v. Boylan, 349 Ill 471, 474–475, 182 NE 614.) However, it has long been held that where the misconduct of the wife has been so gross, as when she has been guilty of moral delinquency such as adultery, it would be an abuse of discretion to award her permanent alimony. See Spitler v. Spitler, 108 Ill 120; Schneider v. Schneider, 286 Ill App 575, 4 NE2d 123.

■ Plaintiff's whole course of conduct after the commencement of this action dictates that she is not entitled to permanent alimony. It cannot be denied that she was guilty of open and notorious adultery and yet the record fails to disclose the slightest hint of remorse or sorrow on her part. Her determination to continue her relationship with King is evidenced by her flat refusal when she was asked by defendant's counsel if she was willing to give up her late hours in an effort to effect a reconciliation. Plaintiff continued her activities in this regard even after the investigators photographed her and King in the King apartment with their knowledge. Finally, defendant's testimony that plaintiff told him, when they were discussing the custody of their minor daughter, that since plaintiff "had been giving her body away and not selling it, she is not a prostitute," went undenied by plaintiff. Under the circumstances plaintiff should not have been awarded permanent alimony.

■ Defendant's other two contentions, that plaintiff is not entitled to attorney fees and that she is not entitled to a one-half interest in the family home, are unavailing. Allowance of attorney fees in a divorce matter rests within the sound discretion of the trial court. Jones v. Jones, 48 Ill App2d 232, 239–240, 198 NE2d 195. Attorney fees may be allowed to the party at fault when

the court finds that that party is financially unable to pay the fees whereas the other party is able to do so. Berg v. Berg, 85 Ill App2d 98, 229 NE2d 282. The record reveals that plaintiff has no means by which to pay her counsel fees and that defendant is financially able to do so. Although the trial court awarded plaintiff a one-half interest in the family home and although she does have a financial interest in that regard, she will derive no benefit therefrom until the minor daughter of the parties reaches majority; the divorce decree expressly enjoins either party from encumbering or selling the property until the daughter reaches majority so that she would have a home until then.

There is evidence in the record that plaintiff, during the marriage but prior to the separation of the parties in February 1967, assisted defendant in building and maintaining the family home and the defendant's business. She is entitled to a one-half interest in the home. The argument raised by defendant that he was induced by fraud to purchase the property in joint tenancy with plaintiff is likewise unavailing. The property was purchased over ten years prior to the parties' separation, and defendant points to no evidence in the record, other than conjectural inferences, showing in what manner plaintiff practiced this fraud upon the defendant. It should also be pointed out that defendant, by his own testimony on direct examination, voluntarily stated that he offered plaintiff cash and several items of personal property, the value of which aggregated over $10,000, "for her [plaintiff's] interest in the home."

For these reasons, the decree of divorce is modified by striking that portion relating to the award of permanent alimony to the plaintiff, and as modified the decree is affirmed.

Decree affirmed as modified.

LYONS, P. J. and McCORMICK, J., concur.