MILFORD POHREN, Plaintiff-Appellee, *v.* MARIE POHREN *et al.*, Defendants-Appellants.

(No. 72-326;

Third District—August 2, 1973.

Winstein, Kavensky & Wallace, of Rock Island, (Dorothea O'Dean, of counsel,) for appellants.

Westphal & Benckendorf, of Peoria, (R. J. Westphal, of counsel,) for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

The plaintiff, Milford Pohren filed a complaint for divorce against the defendant, Marie Pohren, on the grounds of desertion. The complaint also charged that she and the other named defendants refused to transfer certain real property back to plaintiff on his request. After a trial, the Circuit Court of Peoria County entered a judgment granting plaintiff a divorce and, in effect, restoring his property to him. Defendants appeal.

Plaintiff and defendant Marie were married on February 11, 1946, and lived together in Princeton, Illinois, from 1962 until the separation in 1970. Since about July 1968 plaintiff came to Princeton only about once a week on weekends. The rest of the time he was on the road between St. Louis, Chicago or Peoria; and his base of operation in conducting his railway salvage business was Peoria where he maintained a sleeping room. He regarded the Princeton dwelling as his home. He had just got through paneling the basement on weekends and within one year of the August 1970 date had spent a large sum on remodeling and landscaping. In January 1970 the wife objected to plaintiff's coming home at all. For months thereafter, he obtained entrance to his home by prying open a window in the basement. On August 4, 1970, the wife called the police and told them plaintiff was breaking into her home. She told plaintiff to get off the premises or she would have him arrested. She had told him to "get going" on many occasions and had also told him she was going "to kick him out" after their daughter got married. She testified, "I am taking the position at that time (August 4) that Mr. Pohren hadn't any right in the house. * * * It is a fact I told him I didn't want to see him on the premises any more. * * * [A]nd in the presence of all the parties there I told him he wasn't going to get back on the premises any more. As far as I was concerned in that particular episode, I was having nothing further to do with him. * * * We have lived separate and apart since August 1970".

The wife contended throughout, that she had ample justification for

her conduct in that plaintiff had commenced his erratic living pattern about seven years before; that she could not recall when they last lived together as husband and wife; that she was upset by telephone calls and mail that he received from women. All misconduct was denied by the husband.

A spouse is entitled to a divorce on the ground of desertion against the other who wilfully, maliciously, and without reasonable cause locks the other out of the home. (24 Am.Jur.2d, Divorce, sec. 115. Annot., 19 A.L.R.2d 1462, sec. 15. See 1967 U.Ill. L. F. 165; U.Ill. L. F. 183; Weinberg, Illinois Divorce (2d ed.), sec. 198; 1 Illinois Law, Divorce, sec. 13-14.) The reasonable cause must be such conduct as would itself entitle the other party to a divorce, *Mathews v. Mathews*, 227 Ill.App. 465, 469 where the court said, "If one spouse leaves home because of * * * orders to go and not return, the one who leaves is not a deserter and has nothing to justify but must prove his or her reasons for going. The other party is the deserter and to justify his or her course in *sending the other away must prove a cause for divorce*." (Emphasis supplied.)

The leading cases (*Van Dolman v. Van Dolman*, 378 Ill. 98; *Karman v. Karman*, 24 Ill.App.2d 123; *Moyer v. Moyer*, 17 Ill.App.2d 404; *Jeffers v. Jeffers*, 9 Ill.App.2d 572) clearly indicate that Illinois is liberalizing its interpretation of constructive desertion, of *Gillespie v. Gillespie*, 70 Ill. App.2d 38.

■■ That a non-leaving party might be guilty of constructive desertion has long been recognized by Illinois courts. (*Mathews v. Mathews, supra.*) However, most decisions did apply what is known as the conservative approach to constructive desertion holding that the complainant "to justify his separation from the defendant and give rise to a ground of divorce against her for desertion * * * must have been subjected to conduct by her which, in and of itself, would have been a cause for divorce". (*Godfrey v. Godfrey*, 284 Ill.App. 297; *Bramson v. Bramson*, 4 Ill.App.2d 249; *Coolidge v. Coolidge*, 4 Ill.App.2d 205; *Silverstein v. Silverstein*, 178 Ill.App. 145.) Most cases were decided before mental cruelty was added as a ground in 1967. If a party had grounds for divorce when leaving why then bother with constructive desertion?

*Van Dolman v. Van Dolman, supra,* opened the door to the new approach followed in *Moyer v. Moyer, supra,* where the wife had been awarded a separate maintenance decree when she did not have grounds for divorce. After a year passed she brought suit on the grounds of desertion and was granted the relief requested. The rationale was further extended in *Karman v. Karman, supra,* where the court eliminated the requirement of a separate maintenance decree and simply awarded a divorce to the departing spouse without an independent ground of

divorce, stating that, "she became the deserter when she ordered him to leave". In *Jeffers v. Jeffers, supra,* plaintiff left his wife after continued orders to leave, together with a threat to call the sheriff. He was given the divorce. In *Gillespie v. Gillespie supra,* the court cited *Mathews* and *Karman* with approval and held that she became the deserter. Also, see *Snavely v. Snavely,* 349 Ill.App. 369.

Defendant wife contends that the judgment for divorce should be set aside as being contrary to the manifest weight of the evidence. In *Chambers v. Chambers,* 107 Ill.App.2d 456, the court said:

> "the law on the subject of what does or does not constitute the manifest weight of the evidence has been reiterated so many times it seems useless to repeat it here. Nevertheless, the rule is, that where the evidence is in conflict, as in the present case, the court's findings will not be disturbed unless it is so manifestly against the weight of the evidence that it cannot stand, the reason being that the judge has observed the witnesses and heard them testify."

In the instant case the intention of the wife to abandon the marriage relationship (but not the marriage as she testified that she did not believe in divorce) remained fixed and firm even during the trial. The evidence was more than ample to support the finding of the trial court that the defendant wife was guilty of wilful desertion for over a year without reasonable cause.

At the time of the trial the plaintiff had had a series of heart attacks, his sole income was Social Security of $148.00 per month and Medicare (she received $64.50 per month from Social Security). He was no longer able to work and had given up his business. Both husband and wife are in their sixties. During most of the years of the marriage plaintiff had been in business, first as a feed and grain dealer and later in the salvage of canned goods from wrecked railway cars. He had been advised to and did keep title to real estate in the name of trusted friend, a sister of the defendant wife, who later transferred title to the three defendants herein. Record title to a small farm of 30 acres ended in Dolores Mc-Meen, a daughter of the wife by a previous marriage. Dolores admitted she had no interest in the property and would return it if the parties were together. Mary Ann Taylor, a daughter of the marriage, agreed that she had no interest in any of the property. The trial court found that the daughters had no equitable interest in any of the property, they have not contended otherwise on this appeal and we agree with the trial court.

The assets of the husband and wife brought before the court then are the home in Princeton, Illinois, worth $25,000 minus an $8,000 mortgage; the farm worth $12,500; an interest in some Iowa land sold on a contract

now worth $3,000; $1,000 in stocks; $2,000 in bonds (or $3,000?); $2,000 in a savings and loan; a life insurance policy which may be worth $3,000; furniture and two cars. There was a judgment against plaintiff in amount of $2815, for a business indebtedness. The Iowa land contract was ordered to be applied to pay off the judgment and the balance, if any, to be divided equally between the parties. The trial court awarded the wife the stocks, bonds, savings, household furniture and her car; the husband was given office furniture, his car and the life insurance policy. The home and the 30 acre farm were ordered to be sold and the proceeds divided equally between the spouses.

The wife contends that she should have been awarded all the property in lieu of alimony and has cited; *Savich v. Savich*, 12 Ill.2d 454, (in that case the wife was granted the divorce); *Fox v. Fox*, 9 Ill.2d 509 (the husband had enormous wealth and further, had agreed in his complaint to pay for her care and support); *Varap v. Varap*, 76 Ill.App.2d 402 (wife given the divorce); and *Dmitroca v. Dmitroca*, 79 Ill.App.2d 220 (wife given divorce).

Our Statute (Ill. Rev. Stat. 1971, ch. 40, par. 19) provides that when a divorce is decreed, the court may make such order touching the alimony and maintenance of wife or husband as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just. The Statute does not refer to, and does not make an award dependent on the question of fault; and the court is thereby empowered to award alimony to a wife against whom a divorce is granted. *Reavis v. Reavis*, 2 Ill. 242; *Deenis v. Deenis*, 79 Ill. 74; *Spitler v. Spitler*, 108 Ill. 120, (award reversed by Supreme Court); *Rybakowicz v. Rybakowicz*, 290 Ill. 550 (alimony not given); *Boylan v. Boylan*, 349 Ill. 471 (husband had voluntarily agreed to pay); *Adler v. Adler*, 373 Ill. 361 (contract of the parties). This does not mean that she has a right to it in every case, or that it should be granted as a matter of course. The trial court has a discretion in the matter, the exercise of which depends upon all the facts of the particular case. (*Spitler v. Spitler, supra.*) The discretion is a judicial one, not to be exercised arbitrarily. As a general rule when a divorce is granted to a husband because of the fault or misconduct of the wife, she is not entitled to, nor will she be awarded permanent alimony unless the circumstances and the equities of the case justify it. (*Fox v. Fox, supra; Hoffmann v. Hoffmann*, 40 Ill.2d 344.) The objective, in the exercise of such right is to prevent the imposition of an unjustifiable hardship in a given case that would ensue if the general rule were applied. *Adler v. Adler, supra.*

We are concerned with the factors which should be considered in determining whether to grant or deny alimony; and the circumstances of

particular cases as requiring of a court to grant or deny alimony to the wife where the husband obtains the divorce. It has been said that from the very nature of the problem no fixed rules or formulae can be substituted for a careful study of the facts and circumstances of each case. 34 A.L.R.2d 334, sec. 8.

Aside from the factors that affect an award to a wife who is innocent, such as her needs and the husband's ability to meet them, the age, health and physical condition of the parties (*Deenis v. Deenis*) there are a few factors which are of particular importance in determining whether to award alimony to a guilty wife. For example, the court may consider the nature of the wife's misconduct, the fact that the husband was somewhat at fault or contributed to the causes resulting in the separation of the parties * * * the length of time that the parties lived together; children etc.; the interest of society in preventing a woman from becoming a public charge; the fact that the woman married the husband for the purpose of obtaining some of his money, and most important of all the extent to which the wife has contributed in money and labor toward the enhancement and preservation of the husband's estate (or even managing the household on a budget that did not consume all the husband's earnings or estate) *Deenis v. Deenis, supra.*

We cannot agree that the wife in the instant case should be entitled to *all* the property. However, it is undisputed that the wife worked throughout this marriage, first in Chicago for three years when the husband did hardly anything at all, then as bookkeeper for the grain and feed business in Wyanet, Illinois, and lastly in operating a store in Princeton, Illinois, where she sold canned goods from the salvage business until the separation. It is further undisputed that prior to the marriage the wife, from the proceeds of a Workmen's Compensation settlement on the death of her first husband, owned a 2 apartment dwelling in Chicago which was conveyed May 20, 1954, for $20,000 netting $18,000 to her; (A mortgage of $4,000 was paid off during the marriage by rent from an upstairs apartment); that she owned a vacant lot in Elmhurst, later sold for $1,000 and she also held stock of the value of $1,000 which she still retained. At the time of the marriage the husband brought to the marriage only $600, and this was disputed, plus an old Buick car. During the marriage the husband inherited the Iowa property which has been sold on contract and which was worth no more than $5,000.

After the sale of the Chicago home the wife retained $10,000 and *put the other $8,000 into the husband's feed and grain business.* The down payment on the Princeton home was made with proceeds of the sale of the feed and grain business. Of the $10,000 retained, she gave $500 to each of her grandchildren, used about $5,000 for 2 major illnesses (cer-

tainly a family expense), paid about $2500 as attorney's fees in the case of *McKeen v. Whipple*, 23 Ill.2d 352 and still had $2,000 or $3,000 in government bonds plus the account in the Eureka Building & Loan. Did she have $2,000 or $3,000 in bonds? The record is not clear.

There was a $5,000 insurance policy awarded the husband, which policy may be worth $3,000 present cash value. Again, the record is not clear on this point but in response to an interrogatory pertaining to value the plaintiff replied, "Plaintiff has $3,000 insurance policy". What is the present cash value? It should be considered as one of the assets of the parties. *Busby v. Busby*, 11 Ill.App.3d 426 296 N.E.2d 585.

■■ It should be obvious that the wife's "special equities" were far in excess of those of the husband and that she should have more than an even division of the home and the farm in addition to her separate property. Consequently, the division made by the trial court constituted an abuse of discretion which warrants reversal on the question of division of the property and the cause must be remanded to the trial court for further hearing on that issue alone.

Affirmed in part, reversed and remanded in part.

STOUDER, P. J., and SCOTT, J., concur.