BETTY J. GROSS, Plaintiff and Counterdefendant-Appellee, v. JOHN D. GROSS, Defendant and Counterplaintiff-Appellant.

(No. 73-278;

Third District—October 29, 1974.

ALLOY, J., specially concurring.
STOUDER, J., dissenting.

Robert E. Utter, of Mt. Sterling, for appellant.

James D. Lucie, of Lybanger & Collins, of Bushnell, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

Betty J. Gross, the plaintiff, sued John D. Gross, defendant, for divorce on the grounds of mental cruelty. Defendant answered and counterclaimed on the ground of adultery. The Circuit Court of Hancock County denied plaintiff's prayer and granted defendant husband a divorce on the ground of adultery. The court ordered defendant to pay plaintiff alimony in gross and her attorney fees. The defendant appeals from that part of the judgment awarding alimony.

The plaintiff filed her complaint on July 3, 1972. The defendant set up the defense of recrimination (adultery) and filed a counterclaim alleging that the counter-defendant had for more than 18 months prior thereto been living in open and notorious adultery with one William Hester and requesting partition of the only real estate which was co-owned by the parties.

The plaintiff's original complaint did not request an award of alimony nor did it allege any special equities in real estate owned in the name

of the defendant. During the course of the trial the plaintiff was given leave to amend her complaint to allege that during the marriage she had made payments on real estate taxes and general repairs on the property from funds earned while operating the family business, and still later the plaintiff was granted leave to file a second amendment to the complaint to include a request for alimony and attorney fees.

The plaintiff, aged 46 at time of trial, and the defendant, aged 48 at time of trial, were married on the 10th day of August, 1946. To this marriage there was born one son who is now a married adult and self-supporting.

The defendant at the time of marriage and thereafter was a partner with his mother and father in the operation of a jewelry store in Mt. Sterling, Illinois, known as L. A. Gross and Son Jewelry. Prior to the impairment of his eyesight, he was a skilled watchmaker and actively shared the management of the jewelry store. In the year 1963, the defendant's father passed away. Shortly thereafter the plaintiff became actively engaged in the operation of the jewelry store, continuing to be so until March, 1972. The defendant's mother passed away after the commencement of this proceeding.

In 1958 the defendant acquired a farm of approximately 90 acres and a rental residence by inheritance from an aunt; later, he acquired a remainder interest in the residence that his parents occupied. The title to the jewelry store was acquired by the three partners as joint tenants in the year 1946.

The defendant has a history of intemperance which increased in intensity after the death of his father and the loss of his eyesight which precluded the use of his skills in the watch-repair business.

At about the same period the defendant's driver's license was revoked and he has not operated an automobile since. The plaintiff and defendant resided in a home located at the east edge of Mt. Sterling, approximately 1½ miles from the store location. The plaintiff, from necessity, drove the defendant to and from work. The defendant contends that the plaintiff would no longer drive him back and forth, making it necessary for him to move into one of the apartments above the store. The plaintiff disputes this claim although in her complaint she alleges that they have not lived together as man and wife since May, 1965.

The record is full of testimony as to plaintiff's mental and physical anguish attributable fully to defendant's drinking and his inattention to business since 1965. In fact, defendant concedes that it would be ridiculous to portray himself as a kind, dutiful and affectionate husband.

. For a short period of time the plaintiff and their son resided with the defendant in one of the apartments above the store. The plaintiff states

that she left the apartment because defendant's mother had rented it to another.

The income from the various properties progressively deteriorated and the gross sales from the jewelry store during this period were: in 1969—$36,576; 1970—$30,792; and in 1972—$23,280. The reportable incomes which the plaintiff assisted in compiling were: In 1971—$436.80; 1970—$225.40; 1969—$476.45; and 1968—$2,352.45. Plaintiff and defendant each individually took their personal and living expenses from the cash drawer, the exact amount each took being unknown.

In 1967 the plaintiff had an operation in a Macomb hospital, at which time she was visited by one Bill Hester who resided in Plymouth, Illinois. At the same time and in the same hospital, the wife of Bill Hester also had surgery. Prior to her marriage to the defendant, the plaintiff and Mr. Hester had been engaged to be married. The plaintiff does not know how many times Mr. Hester drove to Mt. Sterling to see her prior to 1971 but thinks it may have been six or seven times. On such occasions the defendant was not present. After Mr. Hester's wife died in 1970, he phoned the plaintiff approximately once each week.

During the month of February, 1971, the plaintiff, without the knowledge of the defendant, moved to the home of Bill Hester in Plymouth, Illinois, with whom she continues to reside. From February, 1971 to March, 1972, the plaintiff would drive daily from Mr. Hester's home to the jewelry store in Mt. Sterling where she worked during the day and then returned at night to Mr. Hester's home at Plymouth, Illinois, a distance of approximately 54 miles.

The defendant husband became aware of the situation only a short time prior to plaintiff's permanent departure in March, 1972.

The plaintiff's testimony as to the defendant's conduct included three instances of physical violence, one approximately 15 to 20 years ago which she later assumed resulted in a broken nose, a black eye incurred when she lived in the apartment with the defendant and a kick on the ankle or leg on the day of her departure, together with considerable testimony as to her mental anguish arising from defendant's drinking and his inattention to the store's business problems or her difficulties in the repair and maintenance of the marital home.

Plaintiff also expressed concern, although never threatened, because she had on many occasions observed defendant with a gun in his pocket. Defendant had a gun collection and had it for protection of the jewelry store. Plaintiff on occasions also carried a handgun.

The plaintiff contends that, in spite of her previous engagement to Mr. Hester, the fact that she has spent almost every night since February 1971 with him, including an overnight trip to Missouri to see her son

at school and staying overnight in a motel at Gulfport, Illinois, and their financial arrangements, she is merely a housekeeper and has never engaged in sexual intercourse with Mr. Hester.

Plaintiff receives no set compensation for her services as housekeeper. She originally deposited Mr. Hester's checks and was authorized to write checks on his account with which she paid the household expenses. At the present time she merely cashes his check and pays certain household expenses in cash.

In August, 1972, the plaintiff purchased a residence in Plymouth, Illinois, and Mr. Hester moved into the home with her. She does all the laundry and cooks the meals for Mr. Hester. Mr. Hester does the yard work and repairs to the house.

She cannot remember the last meal she cooked for the defendant and did not do defendant's laundry.

The phone in the home of the plaintiff is listed in the name of William Hester.

The plaintiff claims to have suffered a heart attack in 1971 which went undetected until an examination in September, 1972, and because of her heart condition and growths behind her knees, she is unable to be gainfully employed. She claims expenses of $282 per month and indebtedness of $7350, much of which was not established by written evidence of indebtedness. Her only source of income is an anticipated $50 a month from Mr. Hester for his room and board. Plaintiff did not at any time after her departure request funds from the defendant for support.

The defendant during the trial of the case suffered a stroke and was hospitalized for a period of seven weeks. He is physically unable to care for himself. His son and daughter-in-law now assist in the operation of the jewelry business and live with him in the former residence of his parents.

The plaintiff's appraiser appraised the marital residence at $9,800, the rental residence at $8,500, the former parents' residence at $13,500, the farm at $35,475 and the jewelry store building at $21,000.

The store indebtedness was approximately $4,000 when plaintiff became active in its management and approximately $3,000 when she left. During the interim of her participation it became necessary to place a $6500 mortgage on the farm, the proceeds which were used in the operation of the store. The mortgage has not been reduced.

The trial court found that the wife had not established any specific equities in the property owned by the husband but found that the plaintiff had worked in the store and carried responsibilities for some length of time. The court believed that her present physical disabilities re-

stricted her work at gainful employment and that some provisions for alimony should be made. The court specifically ruled that it was not proceeding under section 17 of the Divorce Act but was proceeding under section 18, *i.e.*, the provision having to do with alimony either in installment payments or in gross. The court found the defendant's equity in the real estate to be $72,000 and that one-fourth would amount to $18,000, which was ordered paid in lieu of periodic alimony. The court further ordered the payment of $1,000 for plaintiff's attorneys fees and ordered partition of the marital residence held in joint-tenancy.

An erring wife often has an equitable or meritorious claim to a portion of the husband's estate on the ground that she worked with him, or worked separately and pooled her money with his and so assisted him in acquiring the estate. Section 17 of our Divorce Act authorizes the trial court to make a just division of the property of the parties in satisfaction of the wife's claims; a separate award of property is made which is distinct from alimony. *Gebhardt v. Gebhardt*, 18 Ill.App.3d 658; Neumark, *Property Rights in Divorce*, 62 Ill. B.J. 242 (1974). However, both parties in the instant case agree that the statute involved herein is section 18 of the Divorce Act (Ill. Rev. Stat., ch. 40, par. 19), which provides in pertinent part:

> "When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband, * * * from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just * * *."

Both parties agree, each citing *Pohren v. Pohren*, 13 Ill.App.3d 380, 384, that the statute does not refer to, and does not make an award to defendant depend on the question of fault and that they further agree that under certain circumstances the court is empowered by the statute to award alimony to a wife against whom a divorce is granted.

Appellant husband, however, contends that it is an abuse of discretion to award alimony to a spouse guilty of adultery, citing *Ganzer v. Ganzer*, 110 Ill.App.2d 394 (1969); *Spitler v. Spitler*, 108 Ill. 120 (1883); and *Hickling v. Hickling*, 40 Ill.App. 73 (1891), which appear to be the only Illinois cases on the exact point.

In *Ganzer*, the court after acknowledging that the trial court in its discretion and under proper circumstances might grant alimony to an erring wife stated, "However, it has long been held that where the misconduct of the wife has been so gross, as when she has been guilty of moral delinquency such as adultery, it would be an abuse of discretion to award her permanent alimony." (10 Ill.App.2d 394, 398.)

*Spitler* held it to be an abuse of discretion to award permanent alimony to a wife who had deserted her husband to live in adultery with

another man. In *Hickling,* where the marriage took place on 13 September and on the 7th day of October thereafter the adultery took place, an award of alimony in gross was reversed.

It is an almost universal rule that permanent alimony will be denied to a wife who is guilty of adultery. 24 Am. Jur. 2d *Divorce and Separation* § 622 (1966); Annot., 9 A.L.R. 2d 1026, 1027 (1950); Annot., 34 A.L.R. 2d 313, 349 (1954); 16A I.L.P. *Divorce* § 154 (1971); 27A C.J.S. *Divorce* § 229(3)b (1959).

■■ In the instant case the erring wife had taken up her illicit relationship with the paramour and continued to reside with him for more than 2½ years prior to the time the decree was entered. She further evidenced no intention of discontinuing the relationship. Her conduct was not an isolated instance of indiscretion or a temporary affair of passion. We agree with *Spitler,* and *Ganzer, supra,* that it is an abuse of discretion to award her alimony and accordingly that part of the judgment awarding alimony to the plaintiff is reversed.

Reversed in part.

Mr. JUSTICE ALLOY specially concurring:

I concur in the conclusion that it was an abuse of discretion to award alimony in gross to the plaintiff in this cause. I do not, however, concur in all of the reasoning set forth in the other reversing opinion filed herein.

I believe that we all agree that the court may make an award of alimony under the terms of section 18 of the Divorce Act (Ill. Rev. Stat. 1971, ch. 40, par. 19) on the basis of what is fit, reasonable and just. Our courts, however, have construed such provision to interpret the statute as meaning that, while it is no longer the rule that alimony may not be granted to a party guilty of misconduct, the courts have reviewed the conduct of the individual involved as one of the significant factors for consideration, and where the conduct is adultery and determined to be so gross as to justify denial of alimony, the award of alimony was considered to be improper. (*Ganzer v. Ganzer,* 110 Ill.App.3d 394, 294 N.E.2d 660 (1969); *Spitler v. Spitler,* 108 Ill. 120 (1883).) In this court in the case of *Pohren v. Pohren,* 13 Ill.App.3d 380, 300 N.E.2d 288, the various facts and circumstances to be considered in the award of alimony were discussed, where the party who was seeking the alimony was guilty of misconduct. It was clearly indicated in such case that the court could consider the nature of the wife's misconduct and the interest of society in preventing a woman from becoming a public charge. In the cause before us, it appears to me that a consideration of such factors would indicate that an award of alimony in gross should be denied to plaintiff and that the discretion of the court should be exercised in a reasonable

manner with consideration of all factors pertinent to the allowance of such an award. I, therefore, conclude, not as a matter of law, but as a matter of determination of whether or not the trial court abused its discretion, that the allowance of alimony in gross in this cause was improper and should be reversed.

Mr. JUSTICE STOUDER dissenting:

I believe the judgment of the trial court should be affirmed and consequently I am not in agreement with the result reached by my colleagues. The award of alimony is based on section 18 of the Divorce Act (Ill. Rev. Stat. 1971, ch. 40, par. 19) which provides in pertinent part "* * * the court may make such order touching the alimony * * * of the wife * * * from the circumstances of the parties and the nature of the case, [as] shall be fit, reasonable and just * * *." The foregoing statutory provision does not make its effect depend upon the grounds for which a decree of divorce is granted and conversely does not exclude its application where any particular ground for divorce is the basis of the decree. So far as the statute is concerned, I find no authority or any holding that where the ground for the divorce is adultery the spouse against whom the decree is entered is as a matter of law barred from seeking and receiving an award of alimony. When the opinion of the court states, "It is an almost universal rule that permanent alimony will be denied to a wife who is guilty of adultery," it seems to me that the court is saying that the adultery of a wife precludes as a matter of law any award of alimony to the erring wife. Such a holding is, I believe, contrary to both the letter and spirit of the statute and goes beyond the two principal cases relied on by either of my colleagues, namely, *Ganzer v. Ganzer*, 110 Ill.App.2d 394, 249 N.E.2d 660, and *Spitler v. Spitler*, 108 Ill. 120. In the *Spitler* case, decided in 1883, the court nominally recognized that the statute did change the common law in that it no longer barred the receipt of alimony by the party guilty of the misconduct. In deciding, however, that the trial court improperly awarded alimony to the party guilty of the misconduct, namely adultery, the court in the *Spitler* case emphasized that at that time a wife had no right to her own income since it belonged to her husband as a matter of law and consequently any increase in the value of property accruing during the marriage was of no concern in the determination or awarding of alimony. Furthermore, the court in *Spitler* observed that the primary responsibility of a husband to support his wife continued only so long as she was a member of his household and that a wife's fault or folly were sufficient reasons for denying her claims. Since the court in *Spitler* rationalized its result by referring to circumstances no

longer deemed relevant, the persuasive force of the opinion is both diminished and of little assistance in a present-day application of the statute.

*Ganzer v. Ganzer*, 110 Ill.App.2d 394, 249 N.E.2d 660, also recognized that even where the misconduct is adultery the wife is not automatically barred from an alimony award even though in that case the court of review concluded the misconduct was so "gross" that an award of alimony was improper. As in *Spitler*, the court in *Ganzer* concerns itself only with the wife's misconduct and if the statute is to be given effect neither the court in *Ganzer* nor in *Spitler* conceive of any circumstances justifying its application. Supporting the result in part because the erring wife was not repentant and rebuffed efforts at reconciliation likewise seems to have introduced irrelevant considerations of doubtful persuasive value so far as the precedential value of the opinion is concerned.

Before proceeding to discuss the award of alimony in this case in terms of judicial discretion, I believe it is important to bear in mind a rule which is a natural outgrowth of the statutory provision. This rule is that alimony is neither punishment for a miscreant nor a reward for the virtuous. (*Sandberg v. Sandberg*, 11 Ill.App.3d 495, 297 N.E.2d 654; *Fox v. Fox*, 129 Ill.App.2d 209, 262 N.E.2d 607.) This does not mean that either party has a right to alimony or that either party has a right to avoid the obligation to pay alimony. Although fault is still retained in this state as a necessary condition to the granting of a divorce, in the general consideration of matrimonial problems and the consequences of deteriorated marital relations the fault concept is losing its vigor and significance in determining property rights and related matters.

In the recent case of *Pohren v. Pohren* (divorce granted for wife's desertion), 13 Ill.App.3d 380, 385, 300 N.E.2d 288, the court, in discussing the factors to be considered in the awarding of alimony even where the party seeking the alimony was guilty of misconduct, indicated the factors which should be considered. According to *Pohren*,

> "Aside from the factors that affect an award to a wife who is innocent, such as her needs and the husband's ability to meet them, the age, health and physical condition of the parties [citations] there are a few factors which are of particular importance in determining whether to award alimony to a guilty wife. For example, the court may consider the nature of the wife's misconduct, the fact that the husband was somewhat at fault or contributed to the causes resulting in the separation of the parties * * * the length of time that the parties lived together; children etc.; the interest of society in preventing a woman from becoming a public charge; the fact that the woman married the husband for the purpose of obtaining some of his money, and most important

of all the extent to which the wife has contributed in money and labor toward the enhancement and preservation of the husband's estate (or even managing the household on a budget that did not consume all the husband's earnings or estate)    *    *    *."

Since the opinion of the court goes no farther than concluding that the court has no discretion to award the appellee alimony because of her adultery, it can hardly be said that the rules of *Pohren* have been applied which make such misconduct only one of the factors relevant to the exercise and discretion by the trial court.

Even though the trial court found the appellee to be guilty of adultery in the instant case and no cross-appeal has been filed from such determination, it seems to me that the facts described indicate that the fault is not one-sided or independently unilateral. From the record it appears the appellant was an alcoholic, was neglectful of and disinterested in his wife and, according to his own admission, it would be ridiculous to portray himself as a kind, dutiful and affectionate husband. While the theory of provocation is not applicable where the charge is adultery such consideration would seem to be applicable in determining whether the trial court properly exercised its discretion in awarding alimony. Since the relative conduct of the parties seems to be the only disputed issue so far as the applicability of the *Pohren* rule is concerned, I think it can be inferred from the record that the trial court did consider the conduct of both parties and could have concluded that the husband's own conduct contributed in substantial measure to the dissolution of the marriage relation. Even though the husband's conduct was not a defense to the charge of adultery, it was relevant in determining that an award of alimony to the erring wife was appropriate. Accordingly, I find no abuse of discretion which as a matter of law renders the determination of the trial court improper.