MILFORD POHREN, Plaintiff-Appellee, *v.* MARIE POHREN *et al.*,
Defendants-Appellants.

Third District   No. 74-430

Opinion filed August 10, 1976.

Winstein, Kavensky & Wallace, of Rock Island, for appellants.

Westphal & Benckendorf, of Peoria, for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

This case has been previously considered by the Third District Appellate Court. (*Pohren v. Pohren* (1973), 13 Ill. App. 3d 380, 300 N.E.2d 288.) A decision was reached affirming the trial court's judgment granting plaintiff a divorce, but ruling that the wife's "special equities" were far in excess of those of her husband, and that there had been an abuse of discretion by the trial court on the question of division of property, and remanded the case to the trial court for further hearing on that one issue. Upon remand the trial court, owing to the time lapse and so as to permit the issue of the wife's special equities to be presented, directed the parties to file amended pleadings. This was done and a hearing ensued. At that hearing, it was stipulated by counsel that the evidence presented at the first hearing and the evidence presented at the remand hearing should be considered by the court.

The evidence presented at the first hearing was adequately

paraphrased in the earlier opinion and need not be repeated here except insofar as that evidence has been clarified or contradicted.

The rationale of the earlier opinion can, in large part, be discerned from the latter portion of the opinion where it is stated:

> "We cannot agree that the wife in the instant case should be entitled to *all* the property. However, it is undisputed that the wife worked throughout this marriage, first in Chicago for three years when the husband did hardly anything at all, then as bookkeeper for the grain and feed business in Wyanet, Illinois, and lastly in operating a store in Princeton, Illinois, where she sold canned goods from the salvage business until the separation. It is further undisputed that prior to the marriage the wife, from the proceeds of a Workman's Compensation settlement on the death of her first husband, owned a 2 apartment dwelling in Chicago which was conveyed May 20, 1954, for $20,000 netting $18,000 to her; (A mortgage of $4,000 was paid off during the marriage by rent from an upstairs apartment); that she owned a vacant lot in Elmhurst, later sold for $1,000 and she also held stock of the value of $1,000 which she still retained. At the time of the marriage the husband brought to the marriage only $600, and this was disputed, plus an old Buick car. During the marriage the husband inherited the Iowa property which has been sold on contract and which was worth no more than $5,000.
>
> After the sale of the Chicago home the wife retained $10,000 and *put the other $8,000 into the husband's feed and grain business.*" 13 Ill. App. 3d 380, 385, 300 N.E.2d 288, 292-293.

It is fortunate for all concerned that the court remanded the case for further hearing on the issue of special equities. The evidence and the reasonable inferences therefrom undoubtedly created an apprehension that the special equities of the wife were not being sufficiently considered. The vagueness of the testimony at the first hearing undoubtedly contributed to this unease and misled the court into findings of fact, some of which now are established as erroneous.

At the hearing on remand, after the pleadings had been amended it appears, contrary to the initial finding of fact, the defendant did not work during the first three years of her marriage. It also appears that the wife did not put $8,000 into the husband's food and grain business, and that the wife did not directly provide any funds for the purchase of the 30-acre farm or the Princeton home. The evidence reveals that the defendant did use $5,000 of her own money for the payment of medical bills and $4,000 for living expenses, and $1,000 for her daughter's education. The evidence at the remand hearing clarifies the employment of the parties and

demonstrates that the husband has for many years worked full time at his various businesses and contributed the product of his labor to the support of his family and to the improvement of their finances. The evidence also discloses that the wife, although not a bookkeeper as previously determined, did watch and tend the food and grain business store when her husband was absent, and in the canned food business she played a substantial role in the selling of goods, collecting money, and paying bills.

At the conclusion of the remand hearing, the trial court ordered that the proceeds of the sale of the Iowa farm be applied to pay plaintiff's debt, and that the balance be divided equally between the parties; that the 30-acre farm and the Princeton residence be sold, and the proceeds divided equally between the parties; that the wife be awarded the stocks, bonds, savings and furnishings of the home; that the husband be awarded office furniture; that the value of the insurance policy on the life of the husband be divided equally between the parties; and that any income from the properties received by defendant after October 1, 1974, be divided equally by the defendant with the plaintiff. The court also found that the evidence neither supported allegations that the defendant put $8,000 into the food and grain business, nor that the husband sold valuable business assets for less than full consideration. Defendant filed notice of appeal on November 6, 1974.

The issue thus is whether the trial court should have awarded a greater portion of the property to the defendant in view of both her work during the marriage and the $10,000 that she used to pay various family expenses. Defendant argues that her "special equities" entitle her to all of the Princeton property rather than only one-half as awarded by the trial court.

■■ . Generally, where property is held in the name of one spouse, the other spouse is not entitled to a transfer of that property unless special equities are shown. (*Ylonen v. Ylonen* (1954), 2 Ill. 2d 111, 117 N.E.2d 98.) In *Gerhardt v. Gerhardt* (1974), 18 Ill. App. 3d 658, 661-662, 310 N.E.2d 224, the court stated:

> "There is no legal formula for determining whether the wife's financial contribution, earnings, frugality, and good management will be deemed sufficient to warrant a conveyance under section 17 of the Divorce Act of all or part of the property held in the name of the husband, and each case must be adjudged on its particular facts. *Cross, supra.*
>
> The record herein discloses clear and convincing evidence that the propery involved, both real and personal, was accumulated through the joint efforts of the parties. Where a wife by her own industry, earnings, labor, economy and frugality has added to the

financial betterment of the parties or to the husband's acquisition of an estate, she has an equitable interest which must be recognized by a fair division of property."

In *Cross v. Cross* (1955), 5 Ill. 2d 456, 125 N.E.2d 488, the wife claimed, *inter alia*, equitable rights to the family residence under section 17 of the Divorce Act (Ill. Rev. Stat. 1953, ch. 40, par. 17.) The court noted that the wife brought $800 to the marriage in addition to various household items, "thereby freeing his income from those expenses so that it could be devoted to savings for the eventual purchase of the property." (5 Ill. 2d 456, 466.) There was also evidence that the wife worked and contributed to the family income all her earnings in addition to rearing a family of three children and doing all the household chores. She also used her monetary gifts for family expenses, which enabled her husband to pay off the mortgage and taxes and maintain the house. The court concluded that the wife was entitled to a one-half interest in the residence.

In *Everett v. Everett* (1962), 25 Ill. 2d 342, 185 N.E.2d 201, the plaintiff argued that she used four or five thousand dollars of her own funds for household expenses and was therefore entitled to special equities in the residence. The supreme court found, however, that during this time the defendant was giving the plaintiff between $285 and $508 a month and making mortgage payments of $203 per month. The court states that generally payments voluntarily made by a wife for family expenses during the time the husband and wife are living together do not create an indebtedness from the husband to the wife. There is an exception, however, if the wife had been providing for a substantial portion of the family expenses while the husband was using his funds to acquire property in his name. But under the facts of this case, the supreme court found that the plaintiff's contribution was a small fraction of the contribution made by the defendant. Therefore, the court did not believe that plaintiff's contributions for household expenses gave her an equity in the residence.

■■ In the instant case, as in *Everett*, the wife used her own funds for family expenses. Furthermore, she used the income from plaintiff's businesses for living expenses. These contributions indirectly aided plaintiff in purchasing the 30-acre farm and the Princeton residence. Therefore, defendant was entitled to some interest in the properties. The husband, however, also contributed to the acquisition of these properties. In addition to providing the funds, he spent $7500 to remodel the Princeton home, and did some of the work of remodeling himself. Although this is denied by the defendant it appears clear that his contribution toward the Princeton property was by far the greater. As to the 30-acre farm, plaintiff improved this property, farmed it for a time, and also did some remodeling.

From the evidence, it is clear that the equities in this case are approximately equal. Both parties are entitled to a portion of the real estate. Given the contributions of each party, it cannot be said that the trial court abused its discretion in awarding each party one-half of the properties involved. Such an award is a fair division of property in this case. Thus, the decision of the trial court is affirmed.

Judgment affirmed.

CRAVEN, P. J., and GREEN, J., concur.